626 So.2d 909 (1993)
Camille B. Martin, Wife of/and John S. MARTIN
v.
Frankie CLANTON, Velvelon Terrell, XYZ Insurance Company and American Motorist.
No. 93-CA-304.
Court of Appeal of Louisiana, Fifth Circuit.
November 10, 1993.
Christopher H. Riviere, Robert M. Pugh, Pugh, Lanier & Riviere, Thibodaux, for plaintiffs/appellants, Camille B. Martin and John S. Martin.
Andrew L. Plauche', Jr., Plauche, Maselli & Landry, New Orleans, for defendant/appellee, American Motorists Ins. Co.
Frankie Clanton, Velvelon Terrell, in pro. per.
Before BOWES, WICKER and GOTHARD, JJ.
BOWES, Judge.
Plaintiffs, Camille B. and John S. Martin, appeal a judgment of the district court granting summary judgment in favor of defendant/appellee, American Motorists Insurance Company (hereinafter "AMIC"), dismissing their action as to AMIC. For the following reasons we reverse and remand.

FACTS
John S. Martin was employed as a route salesman for Lance, Inc. (hereinafter simply "Lance"), a business which delivers food products to various retail outlets. As a consideration of his employment, Mr. Martin was permitted to lease to his employer his *910 personal automobile, in return for which Lance would provide insurance through its fleet insurer, AMIC. As an additional benefit, other personal vehicles belonging to salesmen (such as Martin) could be insured by AMIC through the Lance lease program. A sum was deducted from Martin's salary for payment of the insurance premium. Martin had taken advantage of this lease program and the automobile which is the subject of this action, a 1981 Ford Crown Victoria owned by the Martins, was insured by AMIC.
On March 29, 1990, Mrs. Martin was driving the 1981 Ford in Metairie on the interstate when she was struck from behind by the defendant, Frankie Clanton. Having sustained injuries, she filed suit against Clanton and the owner of the vehicle, Velvelon Terrell, and their insurers. She also sued AMIC as her uninsured/underinsured carrier.
AMIC filed a motion for summary judgment, alleging that under the fleet insurance policy with Lance, Lance had validly rejected UM coverage prior to the date of the accident. Therefore, AMIC asserted that it should be dismissed from the suit as a matter of law. The motion was heard and taken under advisement, and following submission of memoranda, the trial court entered judgment in favor of AMIC. No reasons for judgment were given. The Martins appeal.

ANALYSIS
Plaintiffs/appellants allege that the rejection of UM coverage was invalid because defendants did not prove that Earl Leake, who signed the waiver on behalf of Lance, had corporate authority to do so. Further, plaintiffs allege that as "named" insureds under the policy they were never given the opportunity to accept or reject UM coverage.

CORPORATE AUTHORITY
The written rejection of coverage was signed by "Earl D. Leake, Treasurer, as the authorized representative of Lance, Inc." and was dated August 10, 1989. The pertinent portion of the rejection reads as follows:
Rejection of Underinsured Motorist Coverage
As permitted by state law, I reject underinsured motorist coverage in all states where I am permitted such rejection. My rejection applies to all motor vehicles registered, licensed, or principally garaged in any state where I am permitted such a rejection.
If state law prohibits me from rejecting underinsured motorist coverage, I choose to retain or select the lowest permissible limit for underinsured motorist coverage that is required by statute in each state in which a motor vehicle insured by this policy is registered, licensed, or principally garaged.
At the trial on the motion for summary judgment, plaintiffs did not present any evidence that created a question of fact as to the authority of Mr. Leake. Sworn affidavits were submitted on behalf of AMIC to evidence Leake's authority with Lance.
One of the affidavits was from the insurance manager of Lance, John Wiggins, to the effect that Leake did, indeed, have the authority to execute such insurance waivers; the other was from Leake, attesting to his own authority in the matter and affirming that indeed, he had signed the waiver.
It appears from the evidence in the record that there is no genuine issue of material fact as to whether Leake had authority to waive the UM coverage since no evidence was submitted to contradict the affidavits of Leake and Wiggins.
Where a corporate executive testified that he signed the waiver and had the authority to execute the form, and the affidavit of the corporation's assistant secretary stated that the insurance manager had that authority, the court found a valid waiver without the necessity of a corporate resolution in Delaune v. State Farm Mut. Auto Ins. Co., 529 So.2d 1289 (La.App. 3rd Cir.1988); Meziere v. Farm Bureau Mut. Ins. Co., 560 So.2d 106 (La.App. 3rd Cir. 1990).

Ruiz v. Lewis, 579 So.2d 1203 (La.App. 4 Cir.1991), (which case also involved a motion for summary judgment).
*911 Likewise, here, we find that a corporate resolution was unnecessary under the circumstances; therefore, this assignment of error is without merit.

NECESSITY OF WAIVER OF U.M. BY PLAINTIFFS
However, plaintiffs also assert that the lease agreement form provided to them by Lance, stated that Lance did not carry uninsured motorist coverage unless it was a state requirement. In those states where UM coverage is mandatory, Lance would carry only the minimum requirements required by law. Plaintiffs aver that they were never given the opportunity under the lease agreement or in the insurance policy to reject or not reject UM coverage.
The insurance policy itself was admitted into evidence, and as previously observed, Leake was the only party to sign the waiver, doing so on behalf of Lance. The names of the plaintiffs do not appear anywhere in the policy, which shows, on the declaration page, "Lance, Inc." as the insured. Therefore, it is obvious that the Martins are not "named" insureds on the policy.
Plaintiffs rely on Quittem v. National Rent-A-Car Systems, Inc., 582 So.2d 1337 (La.App. 4 Cir.1991) for the proposition that an automobile rental agency which provides liability coverage for its lessees is under an obligation to allow the lessee to accept or reject UM coverage. Plaintiffs analogize this to their situation, claiming that since Lance provided the liability insurance, it was obligated to afford them a chance to accept or reject UM coverage prior to the date of the accident.
Defendant/appellee attempts to distinguish Quittem on the basis of the facts that Lance is not an automobile rental agency and in fact, is the lessee of the vehicle, rather than the lessor as in Quittem. It cites the case of Bordelon v. Jackson, 499 So.2d 392 (La.App. 4 Cir.1986). In Bordelon, the plaintiffs were occupying a vehicle owned by the Archdiocese and insured by it with Sentry Insurance Company. The court there noted that the Archdiocese was the only "named" insured on the Sentry policy and had rejected UM coverage; as a result, the court found that coverage would not be extended to the non-named insured lessee. In finding for the insurance company, the court in Bordelon adopted its own reasoning in an earlier case, Donnelly v. Greyhound Rent-A-Car, 490 So.2d 377 (La.App. 4 Cir.1986), which held that an automobile leasing agency had no obligation to provide lessees an opportunity to accept or reject UM coverage, but could reject such coverage in its insurance contract with a third party, and impose that rejection on its lessees. As the rental company was the only insured named in the policy, a written rejection by its authorized agent was sufficient compliance with the statutory requirements under Donnelly.
But we find that Donnelly, supra, and Bordelon, supra are no longer valid statements of the law in the Fifth Circuit. Donnelly was partially overruled in Quittem, at p. 1340. In any case, they are not now controlling in this circuit, which has developed another line of jurisprudence. In Ashline v. Simon, 466 So.2d 622 (La.App. 5 Cir.1985), we found that a mandatory condition of rejection of UM coverage in a lessor/lessee automobile contract violates public policy. There, the lessee was obligated to accept a condition of the rental contract which rejected UM coverage if he wished to lease an automobile from Hertz, Inc. As we stated there:
While we agree that the terms and conditions may be binding ordinarily, one of the conditions is a mandatory rejection of U/M coverage. Rather than providing an option to reject as envisioned in the statute, the lessee (or insured) is required to reject coverage. In our opinion, this mandatory condition of rejection is in violation of the public policy inherent in the U/M statute. Consequently, we find the rejection insufficient.
Subsequently, we found in Jones v. King, 549 So.2d 350 (La.App. 5 Cir.1989), that under Ashline, supra:
A mandatory condition of rejection violates public policy; an option to reject is required.
These cases have been cited with approval, and followed, in later cases. See Quittem, *912 supra. In Robinson v. Moore, 580 So.2d 1109 (La.App. 4 Cir.1991), the plaintiff leased a car from General Electric Credit Auto Lease (GECAL) which also sold him automobile liability insurance, part of a group policy issued to GECAL by Progressive American Insurance Company (PAIC). He was not given an option with respect to UM coverage, but obtained insurance as part of his lease agreement. The court there found as follows:
This court has held in Quittem v. National Car Rental Systems, Inc., 582 So.2d 1337 (La.App. 4th Cir.1991) that when an auto leasing agency contracts with a third party to provide insurance coverage, the agency then effectively "sells" a portion of that policy to each lessee, whether the insurance is included in the flat lease rate or as a separate charge. As a result the lessee becomes the `named insured' and, if not given the option to choose or waive UM coverage, the policy liability limits become the UM coverage by operation of law. See also Pollard v. Champion Ins. Co., 532 So.2d 838 (La.App. 4th Cir.1988). Both the second and fifth circuit courts of appeal in Louisiana concur, concluding that automobile leasing companies must give their lessees an opportunity to accept or reject UM coverage. Jones v. King, 549 So.2d 350 (La.App. 5th Cir.1989); Tapia v. Ham, 480 So.2d 855 (La.App. 2d Cir.1985); Ashline v. Simon, 466 So.2d 622 (La.App. 5th Cir.1985). In all three cases the courts held that the agencies, as lessors, could not reject UM coverage applicable to the lessee.
* * * * * *
The UM statute gives the insured the option to waive UM coverage, or to select lower limits. However, the insured must be able to select from a variety of coverage options, for the choice to be a meaningful choice necessary for a valid waiver. * * * Since PAIC failed to provide a variety of options so that a meaningful selection could be made, the decision to accept the offered $10,000 UM coverage rather than to waive UM insurance entirely, was not a valid `selection of lower limits,' as required by the statute. For this reason also, the policy coverage for UM must be reformed by operation of law to make it equal to the amount stated for bodily injury coverage.
See also Akers v. Avis Rent-A-Car, 587 So.2d 831 (La.App. 4 Cir.1991).
While plaintiff, John Martin, is the "lessor" and Lance the lessee of the vehicle, nevertheless, Lance sold a portion of its insurance to plaintiffs, who therefore become "named insureds" as in Robinson, supra and Quittem, supra.
We find that the foregoing line of jurisprudence, beginning in this circuit with Ashline, supra, which case has been followed by this circuit continuously, requires a determination, as a matter of fact, in the present case whether or not the plaintiffs had a meaningful opportunity to accept or reject UM coverage in their lease agreement with Lance. Because the statute reflects a strong public policy favoring UM coverage, any exception to such coverage, including selection of lower limits, must be affirmatively expressed by the insured "clearly, unambiguously and unmistakably[.]" Henson v. Safeco Ins. Companies, 585 So.2d 534, 538 (La. 1991); Young v. Shelter Ins. Co., 604 So.2d 199 (La.App. 2 Cir.1992).
A lease agreement form showing a revision date of June 21, 1988, was filed into the record by appellant. While the lease is unsigned, both parties agreed and stipulated, at oral argument, that that form was the one in effect on the date of the accident. Our review of that lease form reveals that nowhere is the employee, Martin, given the option to accept or reject uninsured motorist coverage. In contrast, an otherwise identical agreement with a revision date of June 5, 1990, does inform the employee that uninsured motorists coverage is available on request for an additional premium. Because (under the line of jurisprudence cited hereinabove) Lance sold a portion of its insurance to the plaintiff, plaintiffs became "named insureds" who must be given an option to choose or waive UM coverage. Because we find that our plaintiff here, Martin, had no such option, it was error for the trial court to grant summary judgment in favor of the defendants.
*913 In Young, supra, the applicable law regarding summary judgment was summarized as follows:
Summary judgment should be granted if, and only if, the pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits, if any, show that there is no genuine issue of material fact and that the mover is entitled to judgment as a matter of law. The movant for the summary judgment has the burden of affirmatively showing the absence of a genuine issue of material fact and any doubt as to the existence of such issue of material fact is to be resolved against granting the motion. To satisfy his burden, the movant must meet a strict standard by showing that it is quite clear as to what the truth is, and that excludes any real doubt as to the existence of material fact.
(Citations omitted).
On the record before us, we find that AMIC is not entitled to judgment as a matter of law, and it was therefore error for the trial court to grant judgment in its favor.

DECREE
For the foregoing reasons, the judgment of the trial court dismissing AMIC from the lawsuit via the summary judgment that was granted is reversed, and the matter is remanded to the trial court for further proceedings. Costs are assessed to appellees.
REVERSED AND REMANDED.