697 So.2d 712 (1997)
Clarence BULLOCK, Plaintiff-Respondent,
v.
HOMESTEAD INSURANCE CO., et al., Defendants-Applicants.
No. 29536-CW.
Court of Appeal of Louisiana, Second Circuit.
June 20, 1997.
William S. Carter, Jr., Ruston, for applicants.
Tracy L. Oakley, Ruston, for respondent.
Before MARVIN, C.J., and GASKINS and CARAWAY, JJ.
GASKINS, Judge.
The defendants in this suit for uninsured/underinsured motorist (UM) coverage, Homestead Insurance Company and Rebel Transport, Inc., contend that the trial court erred in denying their motion for summary judgment that UM coverage had been properly rejected by a named insured and thus no UM coverage was provided. Instead, the trial court granted the plaintiff's motion for summary judgment that the policy provided UM coverage in the amount of $750,000. We granted a supervisory writ to consider the correctness of the trial court's ruling. We now reverse the summary judgment in favor of the plaintiff and grant summary judgment in favor of the defendants.

*713 FACTS
On November 29, 1993, the plaintiff, Clarence Bullock, Jr., was injured in an auto accident in Texas which was caused by the fault of an underinsured driver. The plaintiff was driving a tractor/trailer owned by his father, Clarence Bullock, Sr.; the truck had been leased by the senior Bullock to Rebel, an interstate ICC carrier. Rebel leased trucks from individual owners so the owners could operate under its ICC permit. Under the terms of the lease, Rebel agreed to secure liability insurance for the leased vehicle. In pertinent part, the lease provided:
III.
LESSEES [Rebel] shall secure Public Liability, Property Damage and Cargo Insurance Coverage meeting the requirement of the States under which the vehicle so leased will be operating. The money for this insurance will be deducted from the weekly settlement sheets as needed to maintain the above coverage.
IV.
LESSEES [Rebel] hereby agrees to pay rental for said equipment the sum of 85% (less cost of liability and cargo insurance) of the Gross Revenue derived from the hauling performed by the unit herein covered....
Rebel obtained a Homestead policy with liability coverage of $750,000, effective November 18, 1993. The policy listed the tractor and trailer owned by Bullock, Sr. and operated by Bullock, Jr. The named insured was Rebel; the senior Bullock was an additional insured by endorsement, as were several other truck owners who leased to Rebel. Bullock Sr. paid the premiums monthly by deductions from funds due the truck under the lease. By a form dated November 18, 1993, Rebel's president, Troy Biscomb, rejected UM coverage for the listed vehicles. By affidavit, Bullock, Sr. stated that he was never given the opportunity to accept or reject UM coverage.
The younger Bullock sued the defendants for UM coverage. The parties filed cross motions for summary judgment on essentially the same issue, the validity of the waiver of UM coverage. In his motion for summary judgment, the plaintiff contended that the UM rejection by Mr. Biscomb was not enforceable. In their opposing motion for summary judgment, the defendants asserted that the rejection was valid. The trial court granted the plaintiff's motion for summary judgment while denying the defendants' motion.
The defendants' application for supervisory writs was granted by this court.

LAW

Summary judgment
Summary judgments are reviewed on appeal de novo under the same criteria that govern the district court's consideration of whether summary judgment is appropriate. Schroeder v. Board of Supervisors of Louisiana State University, 591 So.2d 342 (La. 1991); Smith v. Our Lady of the Lake Hospital, Inc., 93-2512 (La.7/5/94), 639 So.2d 730.
Effective May 1, 1996, La.C.C.P. art. 966 was amended to provide that the summary judgment procedure is now favored. The amended article has been construed as procedural in nature and, therefore, subject to retroactive application. See Short v. Giffin, 96-0361 (La.App. 4th Cir. 8/21/96), 682 So.2d 249, and Curtis v. Curtis, 28698 (La.App.2d Cir. 9/25/96), 680 So.2d 1327. However, regardless of whether or not summary judgments are favored, the amended version of La.C.C.P. art. 966 does not change the law regarding the burden of proof in a summary judgment proceeding. The burden of proof remains on the mover to show "that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law." La. C.C.P. art. 966(C).

UM coverage
In Louisiana, UM coverage is provided for by statute and embodies a strong public policy. Roger v. Estate of Moulton, 513 So.2d 1126 (La.1987). The object of the Louisiana UM statute is to promote full recovery of damages by innocent automobile accident victims by making UM coverage available for *714 their benefit as primary protection when the negligent motorist is without insurance. The statute is to be liberally construed to carry out this objective. Hoefly v. Government Employees Insurance Company, 418 So.2d 575 (La.1982); Tapia v. Ham, 480 So.2d 855 (La.App. 2d Cir.1985).
To effectuate its goal of protecting innocent victims from uninsured or underinsured motorists, uninsured motorist coverage is deemed to exist in all automobile policies in an amount equal to the liability limit unless the insured expressly rejects the uninsured motorist coverage. Roger v. Estate of Moulton, supra.
In pertinent part, La. R.S. 22:1406, the UM statute, provides:
D. The following provisions shall govern the issuance of uninsured motorist coverage in this state:
(1)(a)(i) No automobile liability insurance covering liability arising out of the ownership, maintenance, or use of any motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle designed for use on public highways and required to be registered in this state or as provided in this Subsection unless coverage is provided therein or supplemental thereto, in not less than the limits of bodily injury liability provided by the policy, under provisions filed with and approved by the commissioner of insurance, for the protection of persons insured thereunder who are legally entitled to recover nonpunitive damages from owners or operators of uninsured or underinsured motor vehicles because of bodily injury, sickness, or disease, including death resulting therefrom; however, the coverage required under this Subsection shall not be applicable where any insured named in the policy shall reject in writing, as provided herein, the coverage or selects lower limits. In no event shall the policy limits of an uninsured motorist policy be less than the minimum liability limits required under R.S. 32:900. Such coverage need not be provided in or supplemental to a renewal, reinstatement, or substitute policy where the named insured has rejected the coverage or selected lower limits in connection with a policy previously issued to him by the same insurer or any of its affiliates. The coverage provided under this Subsection may exclude coverage for punitive or exemplary damages by the terms of the policy or contract. (Emphasis added.)
As emphasized above, the UM statute provides that UM coverage may be rejected by "any insured named in the policy." That phrase has been equated with the term "named insured." Oncale v. Aetna Casualty and Surety Company, 417 So.2d 471 (La. App. 1st Cir.1982). A wife who qualified under the policy definition of a "named insured" was deemed entitled to reject UM coverage in her own right, not as the agent of her husband, the only "named insured" on the declarations page. Oncale, supra. Where both spouses were listed as named insureds in the policy, either one had authority to select lower UM limits. Huguet v. State Farm Mutual Automobile Insurance Co., 619 So.2d 186 (La.App. 3d Cir.1993), writ denied, 625 So.2d 1059 (La.1993). In Haney v. Zurich Insurance Company, 96-0393 (La. App. 4th Cir. 9/22/96), 680 So.2d 1270, writ denied, 96-2443 (La.12/6/96), 684 So.2d 933, the court found that any of several entities listed as named insured in a policy had authority to reject UM coverage or select lower limits. In that case, a UM coverage form signed by a company representative was applicable to one of its subsidiaries.
An insured under a commercial fleet automobile liability policy is generally not required to execute a new rejection of UM coverage when he adds a new vehicle to his existing policy. A fleet policy by its nature envisions the frequent addition and subtraction of vehicles from coverage. See Chevalier v. Ream, 94-741 (La.App. 3d Cir. 12/7/94), 649 So.2d 746; and Latiolais v. Liberty Mutual Insurance Co., 93-579 (La.App. 3d Cir. 5/4/94), 640 So.2d 448, writ denied, 94-1420 (La.9/23/94) 642 So.2d 1289. However, in a situation where vehicles are not regularly substituted, a new rejection of UM coverage may be required. See Perkins v. Guaranty National Insurance Company, 95-229 (La. App. 3d Cir. 11/2/95), 667 So.2d 559, writ denied, 96-0759 (La.5/31/96), 673 So.2d 1033.
*715 Pursuant to the strong public policy in favor of UM coverage, the jurisprudence has generally held that a vehicle lessor who agrees to provide liability insurance protection to the lessee is an insurer who must provide UM coverage as required by La. R.S. 22:1406. See Ashline v. Simon, 466 So.2d 622 (La.App. 5th Cir.1985); Tapia v. Ham, supra; Pollard v. Champion Insurance Company, 532 So.2d 838 (La.App. 4th Cir. 1988), writ denied, 533 So.2d 374 (La.1988); Jones v. King, 549 So.2d 350 (La.App. 5th Cir.1989), writ denied, 552 So.2d 401 (La. 1989); Quittem v. National Car Rental Systems, Inc., 582 So.2d 1337 (La.App. 4th Cir. 1991); Robinson v. Moore, 580 So.2d 1109 (La.App. 4th Cir.1991), writs denied, 586 So.2d 557, 558 (La.1991); Akers v. Avis Rent-ACar, 587 So.2d 831 (La.App. 4th Cir. 1991), writ denied, 592 So.2d 1299 (La.1992); Trobaugh v. Migliore, 597 So.2d 494 (La. App. 1st Cir.1992). In essence, many of these cases hold that the lessor is not allowed to reject UM coverage on behalf of its lessee.
In Martin v. Clanton, 626 So.2d 909 (La. App. 5th Cir.1993), the court held that, where an employer leased vehicles from its employees and provided fleet insurance, the employees had to be given an option to reject UM coverage. Since the employer's actions effectively sold portions of its policy to the employees, the court reasoned, they therefore became "named insureds" and had to be given a meaningful chance to accept or reject UM coverage. The employer's rejection of UM coverage was found to be not binding on the employees.

DISCUSSION
In ruling in favor of the plaintiff in the instant case, the trial court specifically relied upon Martin, supra. However, the defendants contend that the Martin court's ruling ignored the plain wording of the UM statute and was incorrectly based upon a legal fiction, the "sale" of a portion of the policy. They urge this court to reject this fallacy, to follow the cases of Oncale, Huguet, and Haney, and to hold that rejection by any named insured is sufficient to reject UM coverage in its entirety under the circumstances of the instant case. We agree and rule accordingly.
The lease authorized Rebel to secure liability, property damage and cargo insurance coverage on behalf of Bullock. No mention is made of UM coverage. Thus, Rebel had no contractual obligation to secure UM coverage. See and compare Putzeys v. Schreiber, 576 So.2d 563 (La.App. 4th Cir. 1991), writ denied, 578 So.2d 932 (La.1991). The insurance premiums were to be paid out of Bullock's weekly settlements from Rebel. Thereafter, Rebel secured insurance from Homestead in accordance with the terms of the lease. Our review of the insurance policy and federal law indicates that the coverage was in compliance with ICC regulations, which required maintenance of the minimum limits of liability coverage. See former 49 U.S.C.A. § 10927 and 49 C.F.R. § 1043.2. We have been unable to find any federal law or regulation requiring UM coverage.
The terms of the lease also specified that the insurance coverage be in compliance with the laws of the states where the vehicle operated. Under Louisiana law, any insured named in the policy may reject UM coverage. Rebel, as a named insured, executed a valid, written rejection of UM coverage. Bullock is bound by this rejection.[1] See Oncale, supra, Huguet, supra, and Haney, supra.[2] The statute does not require Rebel to obtain authority from Bullock in order for the rejection to be valid or binding upon Bullock.
We choose not to follow the Martin case because it failed to consider the part of La. R.S. 22:1406(D) which, while mandating UM coverage, nonetheless allowed its rejection by any insured named in the policy.
*716 We distinguish the cases involving commercial car rental entities on which plaintiff relies. These entities are in the business of leasing vehicles to retail customers for profit, providing or guaranteeing liability insurance coverage to the customer and charging the customer for that coverage. The commercial trucking contract between Bullock and Rebel created a wholly different relationship from that established by the contract between a commercial car rental agency and its customer.
We also distinguish those cases which the trial court characterized as involving "fleet policies" where a business entity leases trucks for its employees to deliver the entity's merchandise sold to its customers. We agree with the trial court that the lease-operator agreement renders the Homestead insurance contract in question here "not a typical fleet policy per se." However, we disagree with the trial court that Bullock, Sr., was "buying insurance through Rebel ... [and] is precluded from procuring his own [UM] insurance." We do not find support in this record for that conclusion.
Accordingly, we find that summary judgment in favor of the plaintiff was not warranted in the present case. To the contrary, since the UM rejection executed by the named insured was valid, summary judgment in favor of the defendants is appropriate.

CONCLUSION
Summary judgment in favor of the plaintiff is reversed. Summary judgment is granted in favor of Rebel and Homestead. Costs of this appeal are assessed to plaintiff.
SUMMARY JUDGMENT IN FAVOR OF PLAINTIFF REVERSED; SUMMARY JUDGMENT IN FAVOR OF DEFENDANTS GRANTED.
MARVIN, C.J., assigns additional concurring reasons.
MARVIN, Chief Judge, concurring.
I add these reasons why the summary judgment in favor of plaintiff should be reversed and plaintiff's demands should be dismissed:

Reformation
The trial court denied defendants' motion for summary judgment and granted plaintiff's motion, decreeing that the Rebel-Homestead liability policy is "amended and reformed to provide [UM] coverage to the plaintiff ... of $75,000." My emphasis. Reformation of a written insurance policy is usually founded on some ambiguity or omission of accomplishing the intent of the insured and insurer, but no such suggestion or allegation is made by plaintiff. Plaintiff's motion for summary judgment did not seek reformation of the policy. We also have no allegation or suggestion that Homestead had any dealings or contact with Bullock, Sr. about the content of the policy.

The Lease-Operator Contract
During the contract term the Bullock rig shall be operated "by and under the name of [Rebel]" and "under bonafide trip lease agreements between [Rebel] and other certificated carriers." Par. II.
Rebel shall "secure Public Liability, Property Damage and Cargo Insurance Coverage meeting the requirements of the States under which the [rig] will be operating, [deducting] the money for this insurance ... from [the weekly settlement payments made to Bullock]." Par. III. On Friday of each week, Rebel shall pay Bullock 85 percent "(less the cost of liability and cargo insurance) of the Gross Revenue derived from the hauling [by Bullock's rig]." Par. IV.
Bullock shall pay all "fuel ... oil and lubrication expenses, Road Use Tax, [and shall furnish Rebel] proper documents for any and all maintenance, etc. as required by DOT regulations." Par. V. All payroll and related expenses are Bullock's "responsibility." Par. VI.
"[Bullock] will furnish [Rebel] with Workman's Compensation Insurance Certificate and ... keep it paid up and in force at all times, and agrees to hold [Rebel] harmless from any and all claims that may occur while [Bullock's] employees are driving trucks leased to [Rebel]." Par. VII. The rig "will be operated under [Rebel's] authority as issued by the [ICC] in MC-255467 ... and Louisiana *717 Public Service Commission # 5417-H..." Par. VIII. My emphasis.
With respect to plaintiff's claim against Rebel, we notice that on the face of each of the contract documents relied on by the litigants, Rebel is a principal in the hauling business who contracted with Bullock, Sr., who also is a contractor in the hauling business, to operate the hauling rig as Rebel directs. This circumstance places the contractor, Bullock, and his plaintiff-employee in the status of "conduct[ing] Rebel's business [of hauling]" and constitutes Rebel as the statutory employer of plaintiff under La. R.S. 23:1032, 1061. This circumstance, as our opinion emphasizes, creates a relationship greatly different from the relationship created when a commercial rental company rents a car to a retail consumer.
The above circumstances also question whether, under the two contracts upon which he relies, plaintiff has alleged a cause of action against Homestead and whether plaintiff has a right of action against Rebel other than under the w.c. law or on specific factual allegations of intentional tort. These peremptory exceptions may be noticed by an appellate court. See La. C.C.P. art. 927; Putzeys v. Schreiber, 576 So.2d 563 (La.App. 4th Cir.1991), writ denied; and Kirkland v. Riverwood Intern. USA, Inc., 95-1830 (La.9/13/96), 681 So.2d 329.
NOTES
[1] For the proposition that an additional insured or another named insured is bound by the UM rejection of a named insured, see Continental Insurance Company v. Roth, 388 So.2d 617 (Fla. 3d DCA 1980), and Whitten v. Progressive Casualty Insurance Co., 410 So.2d 501 (Fla.1982). Like its Louisiana counterpart, Florida's UM statute formerly allowed rejection by "any insured named in the policy." See also Shaffer v. Southern Union Gas Co., Inc., 112 Ariz. 145, 539 P.2d 902 (1975).
[2] However, see and compare Taylor v. Meynard, 95-243 (La.App. 5th Cir. 11/15/95), 665 So.2d 464, writ denied, 95-3014 (La.2/9/96), 667 So.2d 540, wherein no UM rejection was executed by any party.