| ¶ STEWART, J.
Plaintiffs, Karen Brandon and Tim Brandon, appeal both a summary judgment in favor of defendant, Lancer Insurance Company (“Lancer”), and the denial of their own motion for summary judgment. Both motions for summary judgment pertain to the validity of a waiver of uninsured motorist (“UM”) coverage by Lancer’s insured and defendant herein, Shreveport Transit Management, Inc., d/b/a Sportran (hereinafter referred to as “Sportran”). For the reasons set forth herein, we find that there are genuine issues of material fact as to the validity of the waiver. Accordingly, we vacate the trial court’s judgment granting Lancer’s motion, affirm the denial of plaintiffs’ motion, and remand for further proceedings.
FACTS
On July 17, 1998, Karen Brandon was injured when a vehicle driven by Joyce Harper allegedly turned left in front of a bus in which she was a passenger. Brandon, an employee of Sportran, was supervising a trainee driver when the accident occurred. Brandon and her husband timely filed suit for damages. The named defendants included Harper; State Farm Mutual Automobile Insurance Company, as Harper’s liability insurer and plaintiffs’ UM insurer; Lancer; and Sportran and the City of Shreveport as indispensable parties. Plaintiffs sought damages exceeding amounts available under Harper’s State Farm policy from the .UM coverage provided under the Lancer policy insuring Karen Brandon’s employer, Sportran.
Relying on a waiver of UM coverage executed by Eugene R. Eddy, general manager of Sportran, on July 14, 1997, Lancer denied in its answer that it provided UM protection and filed a motion for summary judgment based upon the alleged waiver. A hearing to show cause was set for March 6, 2000. Plaintiffs filed an opposition to Lancer’s motion and their own motion for summary judgment. | ^Plaintiffs alleged the invalidity of Lancer’s UM rejection form and asserted that, even if valid, the form executed July 14, 1997, during the effective period of Policy No. BA13145, did not apply to Policy No. BA134573, a new policy in effect on the date of the accident. A hearing on plaintiffs’ motion for summary judgment was set for March 20, 2000. Lancer’s motion was then continued to March 20, 2000, at which time both motions were to be submitted on briefs. The court minutes show that on March 20, 2000, the trial court continued plaintiffs’ motion until March 27.
On March 23, 2000, the trial court rendered a judgment granting Lancer’s motion. The trial court found that the UM rejection form was valid and effective on the date of the accident. The trial court also rendered a judgment the same day denying plaintiffs’ motion for summary judgment. This denial was based upon the ruling as to Lancer’s motion that Spor-tran’s UM rejection was valid. Apparently unaware that their motion had been denied prior to the date it was set for submission, plaintiffs filed additional evidence in support of their motion on March 24, 2000. Thereafter, plaintiffs appealed both the judgment granting Lancer’s motion and the judgment denying their own motion, which was certified as a final, appealable judgment by the trial court.[1] The two basic issues presented for review are whether the UM rejection form is valid in form, and whether the policy in effect at the time of the accident was a new policy, *1205 such that a new UM rejection form would have been required, or a renewal policy, such that no new UM form was required.
DISCUSSION
Summary judgment shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that |3there is no genuine issue of material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(B). Summary judgments are subject to de novo review on appeal under the same criteria that governs the lower court’s consideration of whether summary judgment is appropriate. Schroeder v. Board of Supervisors of Louisiana State University, 591 So.2d 342 (La.1991).
At the time of the execution of the UM rejection form at issue, La. R.S. 22:1406(D)(l)(a)(i) required insurers to provide UM coverage “in not less than the limits of bodily injury liability provided by the policy.” There was no statutorily mandated coverage where any insured named in the policy rejected, in writing, the coverage or selected lower limits. La. R.S. 22:1406(D)(l)(a)(i). Additionally, statutorily mandated coverage was not provided in a renewal, reinstatement, or substitute policy where the insured either rejected UM coverage or selected lower limits in connection with a policy previously issued to him by the same insurer or its affiliates. Id. The statute further provided that “such rejection or selection of lower limits shall be made only on a form designed by each insurer.”[2] La.R.S. 22:1406(D)(l)(a)(ii).
The UM statute is to be liberally construed, with statutory exceptions to coverage interpreted strictly. In this way the object of the UM legislation, namely, the promotion of full recovery for innocent automobile accident victims by making UM coverage available for their benefit, may be achieved. Tugwell v. State Farm Ins. Co. ., 609 So.2d 195 (La.1992); Harris v. Safeway Ins. Co., 31,050 (La.App.2d Cir.9/23/98), 718 So.2d 619. The burden is on the insurer to prove that the insured rejected in writing UM coverage or selected lower limits. Tugwell, supra.
The insurer must place the insured in a position to make an informed rejection of UM coverage. Henson v. Safeco Insurance Companies, 585 So.2d 534 |4(La,1991). The form used by the insurer must afford the applicant the opportunity to make a “meaningful selection” from the three statutory options: (1) UM coverage equal to bodily injury limits in the policy; (2) UM coverage lower than bodily injury limits in the policy; and (3) no UM coverage. Tugwell v. State Farm Ins. Co., supra. The form designed by the insurer for the rejection or selection of lower limits must fairly effectuate the intent of the law. Daigle v. Authement, 96-1662 (La.4/8/97), 691 So.2d 1213. Furthermore, it has been held that the UM statute does not require an affirmative act to choose the mandated UM coverage; an affirmative act is only required to reject coverage or to choose lower limits, when available. Daigle v. Authement, supra; Henson v. Safeco, supra.
The UM form executed in conjunction with the “Business Auto Policy” issued by Lancer to Sportran includes the following statement:
Under Louisiana’s insurance rules and regulations, you may buy Uninsured Motorist Coverage (UM) with limits up to those provided in our bodily injury liability policy. You may reject UM coverage or select lower limits of coverage.
The form then goes on to provide:
UM Coverage
I hereby choose the following option. _ UM bodily injury or death coverage in limits up to (cannot exceed the bodily injury limits in your policy).
*1206 $_per person
$_per accident
$ combined single limits
_ REJECT Uninsured Motorist Protection
By signing, the insured acknowledges that he understands the differences between the available options and that the election made will be binding and effective “for every extension, reinstatement, substitution, amendment, alteration, modification, transferral, replacement or renewal” of the policy.
A rejection of UM coverage was signed by Eugene Eddy, on behalf of Sportran, on July 14, 1997, during the effective period, April 13, 1997 through | sApril 13, 1998, of Policy No. BA13145. From April 13, 1998 through April 13, 1999, Policy No. BA134573 was in effect, and no new UM rejection form was signed on behalf of Sportran. This second policy was designated as a “Renewal” of Policy No. BA13145. Both polices provided the same amount of liability coverage insuring the vehicles operated by Sportran, Shreveport’s mass transit system. As explained by Mr. Eddy in his deposition and as indicated in the policies, the premium was based on the number of vehicles covered. Under the first policy, fifty-five vehicles were covered. Under the policy in effect at the time of the accident, fifty-three vehicles were covered. The evidence presented in support of and in opposition to the motions for summary judgment does not indicate that any vehicles were either added or deleted during the effective period of either policy.
Courts have consistently held that the addition of a car to an individual policy, without changes in bodily insurance limits, amounts to an increase in coverage which constitutes the issuance of a new policy requiring a separate UM rejection. Barnickel v. Myles, 98-2613 (La.App. 1st Cir.12/28/99), 757 So.2d 29, 31, and case cited therein; Chevalier v. Ream, 94-741 (La.App. 3d Cir.12/7/94), 649 So.2d 746, 748 and cases cited therein. A distinction is made if the policy is a commercial fleet policy. In that case, the insured is generally not required to execute a new rejection of UM coverage when he adds a new vehicle to his existing policy. A fleet policy is one that envisions the frequent addition and subtraction of vehicles from coverage. Bullock v. Homestead Ins. Co., 29,536 (La.App.2d Cir.6/20/97), 697 So.2d 712, writ denied, 97-1936 (La.11-7-97), 703 So.2d 1272; Chevalier v. Ream, supra; Latiolais v. Liberty Mutual Insurance Co., 93-579 (La.App. 3d Cir.5/4/94), 640 So.2d 448, writ denied, 94-1420 (La.9/23/94), 642 So.2d 1289. However, where vehicles are not regularly substituted, | sa new rejection of UM coverage may be required. Bullock v. Homestead Ins. Co., supra.
Plaintiffs argue that the second policy is a new policy requiring a new UM rejection form. Plaintiffs point out the number of insured vehicles in the second policy is less than the number of vehicle insured in the first policy. They also point out that the liability premium charge is on a per bus quote and that the individual covered automobiles are listed in the policy. Plaintiffs assert that the covered autos are designated by symbol “7” which, according to the policy section defining the covered autos, are “specifically described autos” defined as only those autos for which a premium charge is shown. Where symbol “7” is used to designate coverage, vehicles acquired after the effective date of the policy period are not automatically covered.
Sportran argues that its sole business is the operation of a fleet of buses and vehicles which are frequently replaced. Since the frequent addition and deletion of vehicles was contemplated, the policy issued by Lancer was a fleet policy for which a new UM rejection form was not required upon a change in the number of vehicles insured under the renewal policy.
The instant case does not involve the addition or deletion of vehicles during the policy period, which is a commonly addressed issue in our jurisprudence. Rather, the instant case involves the dele *1207 tion of three vehicles upon the issuance of a second policy designated as a renewal of the first policy. Renewal refers to the “issuance and delivery by an insurer of a policy replacing at the end of the policy period a policy previously issued and delivered by the same insurer....” La. R.S. 22:686.1. A renewal generally does not occur when the insured selects new liability coverage limits, adds another insured and the new insured’s vehicle, or adds an endorsement which materially changes the risks insured by the contract. See Lovoi v. Ladreyt, 94-1002 (La.App. 5th Cir.4/12/95), 655 So.2d 387, 388, writ denied, 95-1216 (La.6/23/95), 656 So.2d 1031 and cases cited therein.
After carefully reviewing the submissions of the parties in support of and in opposition to their motions for summary judgment, we find that genuine issues of material fact exists which preclude summary judgment. First, we find that an issue of fact exists as to whether the UM form utilized by Lancer is adequate for the purpose of allowing the insured to make a meaningful selection from the statutory options. The form suggests, contrary to the statutory and jurisprudential requirements, that the insured is required to make some affirmative act in order to obtain the statutorily mandated coverage. Second, we find that an issue of fact exists as to whether the Lancer policy is a fleet policy and whether the second policy is a renewal policy for which an additional UM waiver, if the form is indeed valid, would not be required. In his deposition, Eugene Eddy, the manager of Sportran, describes the process of replacing older model buses no longer in service. Eddy indicated that it could take up to a year to receive a new bus once it is ordered. Usually, only one bus is obtained at a time. Once the bus is delivered, additional equipment is installed, service is required, road tests are performed, and drivers are trained to use any new features. While it is clear that Sportran will, at times, add or delete vehicles from coverage, it is not clear that Sportran or its insurer, Lancer, contemplated the frequent addition or deletion of vehicles as is the case when a fleet policy is issued. Eddy also stated his impression that he is required to reject UM coverage with every policy, whether a new or renewal policy. An issue exists as to whether the change in the number of vehicles covered under the second policy and any changes in endorsements from the first policy renders the second policy a new policy rather than a renewal.
These issues of fact preclude summary judgment in favor of Lancer. We note that plaintiffs have appealed the denial of their own motion for summary | judgment. These same issues of fact likewise preclude summary judgment in favor of plaintiffs.
CONCLUSION
Upon finding genuine issues of material fact which preclude summary judgment in favor of either party, we hereby vacate the judgment of the trial court granting Lancer’s motion for summary judgment and affirm the denial plaintiffs’ motion for summary judgment. The matter is remanded to the trial court for further proceedings. Costs of this appeal are to be shared equally.
VACATED IN PART, AFFIRMED IN PART, AND REMANDED.

. State Farm, as plaintiffs’ UM insurer, also appeals the judgments appealed from by plaintiffs.

. The statute was amended by Acts 1997, No. 1476, to require forms prescribed by the commissioner of insurance for the rejection of UM coverage or the selection of lower limits.