STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

2019 CW 1276

DANNY BARRAS

VERSUS

RONALD JACKSON, GEICO CASUALTY COMPANY, AND STATE
FARM MUTUAL AUTOMOBILE COMPANY

Judgment Rendered: ___SEP 1 8 2020___

* * * * * * * *

On Review from the 19th Judicial District Court
In and for the Parish of East Baton Rouge
State of Louisiana
No. 658484

The Honorable Wilson Fields, Judge Presiding

* * * * * * * *

Frederic C. Fondren                 Attorneys for Relators
George O. Luce                      Ace American Insurance
Mayhall Fondren Blaize              Company and UV Insurance Risk
Houma, Louisiana                    Retention Group, Inc.

Brad M. Barback                     Attorneys for Respondent
Peyton P. Murphy                    Danny Barras
Troy D. Morain
Todd C. Comeaux
Baton Rouge, Louisiana

Tucker Giles                        Attorneys for Respondent
Baton Rouge, Louisiana              State Farm Mutual Automobile
                                    Insurance Company

* * * * * * *

BEFORE: WHIPPLE, C.J., GUIDRY AND WOLFE, JJ.

**WHIPPLE, C.J.**

In this application for supervisory writs of review, relators-defendants, Ace American Insurance Company ("Ace Insurance") and UV Insurance Risk Retention Group, Inc. ("UV Insurance"), challenge the ruling of the trial court which denied their motion for summary judgment seeking dismissal from this action based upon rejections of uninsured/underinsured motorists coverage ("UM").

For the following reasons, we grant the writ, reverse the ruling of the trial court, grant the motion for summary judgment and dismiss plaintiff's claims against Ace Insurance and UV Insurance.

## FACTS AND PROCEDURAL HISTORY

Plaintiff, Danny Barras ("Barras"), filed this action seeking damages for injuries arising from an automobile accident which occurred on November 18, 2016, when a vehicle driven by defendant, Ronald Jackson, lost control, crossed the center line and struck the tractor-trailer operated by Barras. The original petition filed by Barras named as defendants Ronald Jackson, his insurer, GEICO Casualty Company, and Barras' personal UM insurer, State Farm Mutual Automobile Insurance Company ("State Farm"). Barras subsequently amended his petition to name additional defendants, including Ace Insurance and UV Insurance, alleging they issued policies with UM coverage to UV Logistics, LLC d/b/a United Vision Logistics ("UVL"), and that he was employed with UVL and covered by such policies.

Effective January 1, 2009, Fast Cast Trucking, LLC[1] leased the tractor-trailer operated by Barras at the time of this accident, to Ace Transportation, LLC ("Ace Transportation"), an authorized for-hire interstate motor carrier, pursuant to

---

[1] In his brief to this court, Barras refers to Fast Cast Trucking, LLC as his "personally held LLC". Barras signed the Ace Agreement as "owner" of Fast Cast Trucking, LLC.

2

the terms of an Independent Contractor Operating Agreement (the "Ace Agreement"). Ace Transportaton and three other companies were purchased by an equity firm. The Companies continued to operate in their own name and authority until January of 2011, when they merged into UVL.

The Ace Agreement provided for a one-year term, renewing automatically from year to year, unless terminated sooner in writing and upon the specified notice by either party. In addition, any modification to the agreement was not binding unless in writing and signed by both parties. Although a new agreement between Fast Cast Trucking, LLC and UVL was not entered into, Section 20 of the Ace Agreement provided that the agreement shall be binding upon and inure to the benefit of the parties and their respective successors.

The Ace Agreement further provided as follows, in Section 14(b)(3):

> Other Insurance. In addition to the insurance coverages required under the AGREEMENT, **it is CONTRACTOR'S [Fast Cast Trucking, LLC] responsibility to procure, carry, and maintain any** fire, theft, **uninsured and/or underinsured motorist,** physical damage (collision), **and any other Insurance coverage that CONTRACTOR may desire** for the Equipment or for CONTRACTOR's life, health care, dental care, vision care, or other needs. As provided in the AGREEMENT, CONTRACTOR holds CARRIER harmless with respect to loss of or damage to CONTRACTOR's Equipment, trailer, or other property, and CARRIER has no responsibility to procure, carry, or maintain any insurance covering loss of or damage to CONTRACTOR's Equipment, trailer, or other property. **CONTRACTOR acknowledges that CARRIER [Ace Transportation] may, and CONTRACTOR hereby authorizes CARRIER to, waive, reject, or reduce no-fault, uninsured, and underinsured motorist coverage from CARRIER's Insurance policies to the extent allowed under the laws of Louisiana** and Texas, the states in which CARRIER's insurance policies are [delivered], and CONTRACTOR shall cooperate in the completion of all necessary documentation for such waiver, election, rejection, or reduction. [Emphasis added].

UV Insurance issued a policy of automobile liability insurance for the period of 1/31/16 to 1/31/17, and the named insured on that policy is "UV Logistics LLC d/b/a United Vision Logistics." Ace Insurance issued a policy of excess business auto policy and excess truckers liability policy for the period of 1/31/16 to 1/31/17,

3

and the named insured on that policy is UVL Acquisition Holding, LLC. According to a Joint Venture Endorsement to that policy, UVL is one of the "Scheduled Entities" and is also a named insured. A rejection of UM coverage for the UV Insurance policy no. RRG194705-16 was signed by Timothy T. Alguire on behalf of UVL and dated 1/31/16. A rejection of UM coverage for the Ace Insurance policy no XSAH09040249 was signed by Tim Alguire and dated 2/5/2016.

Ace Insurance and UV Insurance filed a motion for summary judgment, alleging that UM coverage was validly rejected in each of the policies. Accordingly, both insurers asserted there was no UM coverage under their policies and they should be dismissed from this action. Both Barras, and his personal UM insurer, State Farm, opposed that motion. The trial court denied the motion for summary judgment, and the insurers filed the instant writ application seeking, supervisory review of that ruling. This court issued a briefing schedule pursuant to LSA-C.C.P. art. 966(H) and, after the briefs were filed, heard oral argument from the parties herein.

## LAW AND DISCUSSION

A motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. LSA-C.C.P. art. 966(A)(3). In determining whether summary judgment is appropriate, appellate courts review evidence *de novo* under the same criteria that govern the trial court's determination of whether summary judgment is appropriate. Green v. State Farm Mutual Automobile Insurance Company, 2007–0094 (La. App. 1st Cir. 11/2/07), 978 So. 2d 912, 914, writ denied, 2008–0074 (La. 3/7/08), 977 So. 2d 917.

4

On a motion for summary judgment, if the issue before the court is one on which the party bringing the motion will bear the burden of proof at trial, the burden of showing that there is no genuine issue of material fact is on the party bringing the motion. See LSA-C.C.P. art. 966(D)(1); Rider v. Ambeau, 2011-0532 (La. App. 1st Cir. 2/1/12), 100 So. 3d 849, 854. An insurer seeking to avoid coverage through summary judgment must prove some provision or exclusion applies to preclude coverage. Halphen v. Borja, 2006-1465 (La. App. 1st Cir. 5/4/07), 961 So. 2d 1201, 1204, writ denied, 2007-1198 (La. 9/21/07), 964 So. 2d 338. Thus, in this case, the burden of proof on the motion for summary judgment remained with the insurers herein.

The issue of whether an insurance policy, as a matter of law, provides or precludes coverage is a dispute that can be resolved properly within the framework of a motion for summary judgment. Green, 978 So. 2d at 914. However, summary judgment declaring a lack of coverage under an insurance policy may not be rendered unless there is no reasonable interpretation of the policy, when applied to the undisputed material facts shown by the documents supporting the motion, under which coverage could be afforded. Green, 978 So. 2d at 914.

The insurers, Ace Insurance and UV Insurance, assert that they produced valid rejections of UM coverage on behalf of a named insured under the policies, and therefore, summary judgment should have been granted dismissing the claims against them. Plaintiff, Barras, and his personal UM insurer, State Farm, opposed the motion, arguing the insurers failed to show compliance with the factors set forth in Duncan v. U.S.A.A. Insurance Co., 2006-363 (La. 11/29/06), 950 So. 2d 544, the Ace Agreement, which contained a provision authorizing Ace Transportation to waive UM coverage, was no longer in existence at the time of the

5

waiver, and UVL had to offer Barras the opportunity to obtain UM coverage or waive such coverage.

Louisiana Revised Statute 22:1295 governs the issuance of UM coverage and provides, in pertinent part, as follows:

> (1)(a)(i) No automobile liability insurance covering liability arising out of the ownership, maintenance, or use of any motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle designed for use on public highways and required to be registered in this state or as provided in this Section unless coverage is provided therein or supplemental thereto, in not less than the limits of bodily injury liability provided by the policy, under provisions filed with and approved by the commissioner of insurance, for the protection of persons insured thereunder who are legally entitled to recover nonpunitive damages from owners or operators of uninsured or underinsured motor vehicles because of bodily injury, sickness, or disease, including death resulting therefrom; **however, the coverage required under this Section is not applicable when any insured named in the policy either rejects coverage,** selects lower limits, or selects economic-only coverage, in the manner provided in Item (1)(a)(ii) of this Section. [. . .]
>
> (ii) Such rejection, selection of lower limits, or selection of economic-only coverage shall be made only on a form prescribed by the commissioner of insurance. The prescribed form shall be provided by the insurer and signed by the named insured or his legal representative. The form signed by the named insured or his legal representative which initially rejects such coverage, selects lower limits, or selects economic-only coverage shall be conclusively presumed to become a part of the policy or contract when issued and delivered, irrespective of whether physically attached thereto. **A properly completed and signed form creates a rebuttable presumption that the insured knowingly rejected coverage,** selected a lower limit, or selected economic-only coverage. [. . .]
> [Emphasis added.]

The object of UM insurance is to provide full recovery for automobile accident victims who suffer damages caused by a tortfeasor who is not covered by adequate liability insurance. Duncan, 950 So. 2d at 547. The UM statute is to be liberally construed, and thus, exceptions to coverage are to be interpreted strictly. Any exclusion from coverage in an insurance policy must be clear and

6

unmistakable, and the insurer bears the burden of proving any insured named in the policy rejected, in writing, coverage equal to bodily injury coverage or selected lower limits. Duncan, 950 So. 2d at 547.

In Duncan, the Supreme Court noted that the commissioner of insurance, in drafting the form, required that the insured must complete six tasks for a valid rejection of UM coverage:

> The insured initials the selection or rejection chosen to indicate that the decision was made by the insured. If lower limits are selected, then the lower limits are entered on the form to denote the exact limits. The insured or the legal representative signs the form evidencing the intent to waive UM coverage and includes his or her printed name to identify the signature. Moreover, the insured dates the form to determine the effective date of the UM waiver. Likewise, the form includes the policy number to demonstrate which policy it refers to. Thus, the policy number is relevant to the determination of whether the insured waived UM coverage for the particular policy at issue.[2]

Duncan, 950 So. 2d at 552.

Barras and State Farm argue that a factual dispute exists as to the dating of the UV Insurance form and as to the electronic signature on the Ace Insurance form, precluding summary judgment. The UV Insurance rejection form was signed by Timothy Alguire, as the representative of UVL. The date of "1/31/16" was typed, not handwritten by Mr. Alguire. Barras and State Farm cite the deposition testimony of Richard Yandel, in the corporate deposition of UV Insurance and UVL, who, when asked if he knew whether the date was typed before Mr. Alguire's signature, responded, "I don't think it was. I don't recall specifically, no." Later, Mr. Yandel was asked when he filled in some of the information on the form if this form was already dated, and he responded, "I believe it was, but I don't specifically recall." Accordingly, Barras and State Farm

---

[2]It should be noted that the policy number is no longer required pursuant to a bulletin issued by the Commissioner of Insurance. However, that is not an issue herein.

7

contend that the form was dated after Mr. Alguire signed it and, relying on Gray v. American National Property & Casualty Co., 2007-1670 (La. 2/26/08), 977 So. 2d 839, argue that the form is invalid.

In Gray, the Supreme Court found the UM selection form did not meet the necessary requirements because the spaces for the amount of lower UM coverage were blank, as were the spaces for the printed name of the insured, the policy number and the date. See Gray, 977 So. 2d at 846. The form was later completed by an employee of the insurance agency, who documented the policy number, the date of the policy and the UM limits. The date filled in by the employee was the date the policy period began, but the representative who signed the form was not authorized and the form was not sent to him until after that date. Accordingly, the date on the form was clearly not the date it was signed. See Gray, 977 So. 2d at 848. While we find the facts of Gray distinguishable from this matter, we also note that in Lynch v. Kennard, 2009-282 (La. 5/15/09), 12 So. 3d 944 (per curiam), the Supreme Court found a UM rejection form valid when dated by the insured's secretary after he signed the form, as he was walking out of the office.

In this case, the insurers submitted an affidavit of Mr. Alguire, the representative who signed the forms, who attested that he executed the UV Insurance form on January 31, 2016, and he executed the Ace Insurance form on February 5, 2016, the dates shown on the respective forms. Accordingly, we find the insurers produced sufficient, credible evidence to show that Mr. Alguire executed the forms on the stated dates.

Barras and State Farm further argue, with regard to the Ace Insurance form, that the form was never actually executed by UVL's representative because the form was populated by the computer, which included the signature of Mr. Alguire. However, we note that in Garay-Lara v. Cornerstone National Insurance Company,

8

2013-2016 (La. App. 1st Cir. 5/2/14), 145 So. 3d 423, a UM rejection form, which was printed out after an insured verbally made selections and contained an electronic signature, was found valid by this court. Such a holding is consistent with LSA-R.S. 9:2607, which provides that a record or signature may not be denied legal effect or enforceability solely because it is in electronic form, and if a law requires a signature, an electronic signature satisfies the law. See LSA-R.S. 9:2607(A)&(D). Accordingly, we find the Ace Insurance rejection form met the legal requirements for such rejection. Having found both rejection forms include the necessary requirements set forth in Duncan, such forms create a rebuttable presumption that the insured, UVL, knowingly rejected coverage. See LSA-R.S. 22:1295(1)(a)(ii).

Barras and State Farm further assert that Barras was not provided with a meaningful opportunity, as an insured, to reject UM coverage.[3] First, they assert that the Ace Agreement in which Fast Cast Trucking, LLC granted to Ace Transportation the right to reject such coverage expired as a result of the "merger agreement" between the trucking companies to which Fast Cast Trucking, LLC was not a party. We find no merit to this argument, as the Ace Agreement itself provided that the agreement would inure to the benefit of the parties' successors and that any modification to the agreement was not binding unless in writing and signed by both parties. Nevertheless, even assuming arguendo that such agreement was invalid or did not provide such authority to reject UM coverage, our ruling would not differ because LSA-R.S. 22:1295 does not require each insured under a policy to execute such a rejection, but instead, only requires the rejection by any

---

[3]Although Barras asserts he was an insured and appears to make this assertion as owner of the tractor-trailer, arguing that he leased "his 18-wheeler" to UVL and referencing "[his] position as a purchaser of liability insurance," according to the Ace Agreement, it was Fast Cast Trucking, LLC, which is not a party to this action and which represented and warranted it was the "owner" of the tractor-trailer, not Barras individually, although Barras is identified as the owner of Fast Cast Trucking, LLC. Nevertheless, this issue is not dispositive herein.

9

insured named in the policy. As UVL is a named insured under both policies at issue herein, its rejection of UM coverage is valid for the policies.

Secondly, Barras and State Farm argue that he should have been given the opportunity to reject UM coverage, relying on Martin v. Clanton, 93-304 (La. App. 5th Cir. 11/10/93), 626 So. 2d 909. In that case, Martin leased his personal vehicle to his employer, Lance, and in return, Lance provided insurance coverage through its insurer, AMIC. Martin was also provided the opportunity to insure his other vehicles through the lease program. After an accident, Martin asserted he was entitled to UM coverage through the policy. Although Lance had executed a valid rejection of the UM coverage, Martin argued he was entitled to UM coverage because he was never given the opportunity under the lease agreement or in the insurance policy to reject or not reject UM coverage. The court noted that Martin's name did not appear on the policy, and Lance was the named insured. The court found that AMIC was not entitled to summary judgment, which had been granted by the trial court. In doing so, the court noted that while the lease form informed Martin that UM coverage was available on request for an additional premium, he was not given the option to accept or reject the coverage. The court further found that Lance sold a portion of its insurance to Martin, and therefore, plaintiffs, Martin and his wife, became named insureds who must be given an option to choose or waive UM coverage. See Martin, 629 So. 2d at 912.

However, in Bullock v. Homestead Insurance Company, 29,536 (La. App. 2nd Cir. 6/20/97), 697 So. 2d 712, writ denied, 97-1936 (La. 11/7/97), 703 So. 2d 1272, the plaintiff, Bullock, was driving a tractor/trailer owned by his father and leased to Rebel, an interstate carrier. The lease agreement provided that Rebel would secure liability, property damage and cargo insurance and would deduct the money for such insurance from settlements with Bullock's father. Rebel obtained

10

a policy, under which it was the named insured, and Bullock's father was an additional insured by endorsement. Rebel's president executed the waiver of UM coverage. The court noted that LSA-R.S. 22:1295 provides that such coverage may be rejected by "any insured" named in the policy.[4] See Bullock, 697 So. 2d at 714. The court found that Rebel, as a named insured, executed a valid UM rejection and that Bullock was bound by this rejection. In doing so, the court specifically chose not to follow Martin, finding it failed to consider the portion of LSA-R.S. 22:1295 which allows rejection of UM coverage by any insured named in the policy. The court also distinguished the cases involving commercial car rental entities which were involved in the business of leasing vehicles to retail customers for profit, providing or guaranteeing liability insurance coverage to the customer and charging for that coverage. The court found that the commercial trucking contract at issue created a wholly different relationship from that established by a car rental agency and its customer. See Bullock, 697 So. 2d at 715-716.

In Reily v. Frey, 99-1166 (La. App. 1st Cir. 6/23/00), 762 So. 2d 728, plaintiff, Reily, was driving a vehicle owned by Wheels and leased to Reily's employer, Team. Team was required to maintain its own liability insurance under the lease. Team was the named insured on the policy and executed a UM waiver. Reily was not provided with an opportunity to either select or reject UM coverage. Reily argued that he should have been given an opportunity to either accept or reject UM coverage as a lessee. This court noted that, assuming arguendo that Reily was a sublessee and entitled to accept or reject UM coverage, the responsibility to give him this option lay with Team, not the insurer, Hartford. See Reily, 762 So. 2d at 730. The court found that Hartford could only rely on Team's

---

[4]The applicable UM statute in effect at the time and interpreted by the court in Bullock was LSA-R.S. 22:1406.

11

rejection as it had no contractual relationship with Reily and that Team's rejection was valid for purposes of insulating Hartford from UM claims by Team or Reily. This court noted the language of LSA-R.S. 22:1295 and the holding in Bullock that "any named insured" may reject such coverage and affirmed the dismissal of Hartford.[5] See Reily, 762 So. 2d at 730-731.

Likewise, the clear and unambiguous language of LSA-R.S. 22:1295 allows any insured named in the policy to reject UM coverage. As noted above, UV Insurance and Ace Insurance established that the UM rejection forms created a rebuttable presumption that UM coverage was validly rejected. Barras and State Farm have failed to rebut that presumption, and accordingly, the trial court erred in denying the motion for summary judgment filed by defendants, UV Insurance and Ace Insurance.

## CONCLUSION

For the foregoing reasons, the August 26, 2019 judgment of the trial court, which denied the motion for summary judgment filed by defendants, Ace American Insurance Company and UV Insurance Risk Retention Group, Inc., is reversed. The motion for summary judgment filed by Ace American Insurance Company and UV Insurance Risk Retention Group, Inc. is hereby granted, and the claims of plaintiff, Danny Barras, against defendants, Ace American Insurance Company and UV Insurance Risk Retention Group, Inc., are dismissed.

Costs of this appeal are assessed one-half each to plaintiff/respondent, Danny Barras, and to defendant/respondent, State Farm Mutual Automobile Insurance Company.

**WRIT GRANTED; REVERSED AND RENDERED.**

---

[5]The UM statute in effect at that time and interpreted by the court was LSA-R.S. 22:1406.

12