924 So.2d 250 (2006)
Mark LEE and Belinda Lee
v.
Kristie NAQUIN, Gary Naquin, Progressive Casualty Insurance Company as the Liability Insurance Carrier for Kristie Naquin and/or Gary Naquin and United Fire Insurance Company as U/M Insurance Carrier for Intertrust Armored Service, L.L.C.
No. 05-CA-606.
Court of Appeal of Louisiana, Fifth Circuit.
February 3, 2006.
*251 Richard A. Tonry, Michael C. Ginart, Jr., Kim C. Jones, Richard A. Tonry, II, Cullen A. Tonry, Attorneys at Law, Mandeville, Louisiana, for Plaintiff/Appellant.
Sidney J. Angelle, Brant J. Cacamo, Attorneys at Law, Mandeville, Louisiana, for Defendant/Appellee.
Panel composed of Judges CLARENCE E. McMANUS, WALTER J. ROTHSCHILD and SAM A. LeBLANC, III, Pro Tempore.
SAM A. LeBLANC, III, Judge Pro Tempore.
Plaintiffs, Mark Lee and Belinda Lee, appeal a summary judgment granted in favor of defendant, United States Fire Insurance Company ("United"). For reasons that follow, we affirm the judgment of the trial court.
Plaintiffs allege in pleadings that on August 20, 2002, while in the course and scope of his employment as a guard for Intertrust Armored Services, L.L.C. ("Intertrust"), Mark Lee exited an armored truck to deliver monies to various establishments when another vehicle struck the open rear door of the armored truck, causing the door to violently strike and severely injure Mr. Lee. Plaintiffs further allege that at the time of the incident United was Intertrust's uninsured/underinsured motorist ("UM") carrier.
*252 United filed a motion for summary judgment alleging that Intertrust had rejected UM coverage prior to the August 20, 2002 accident. The basis for this motion for summary judgment was that on March 22, 2002 William E. Logan, III, Managing Member and President of Intertrust, executed an Uninsured/Underinsured Motorist Bodily Injury Coverage Form, rejecting UM coverage as part of Intertrust's commercial auto insurance policy. The trial court granted United's motion for summary judgment and dismissed plaintiffs' petition as to United. Plaintiffs appealed.
Appellate courts review summary judgment de novo using the same criteria applied by the district court in order to determine whether the grant of summary judgment was appropriate. Gautreaux v. Dufrene, 04-970 (La.App. 5 Cir. 1/11/05), 894 So.2d 385, 387.
The summary judgment procedure is favored and is designed to secure the just, speedy, and inexpensive determination of actions. La.C.C.P. 966(A)(2). A motion for summary judgment should be granted only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law. La.C.C.P. 966(B).
There is no dispute that the Intertrust vehicle involved in this accident was insured pursuant to commercial auto insurance policy no. 1336684617 ("the policy") issued by United States Fire Insurance Company. The policy period was from 03/22/02 to 03/22/03. The issue is whether William E. Logan, III's ("Logan") March 22, 2002 attempt to reject UM coverage for Intertrust was effective.
Plaintiffs assert that the UM rejection in this case was invalid because Logan did not indicate he was signing on behalf of the insured, Intertrust; the UM form references a different policy number; premiums for UM coverage are included in the insurance quote; and the policy contains numerous "non-boilerplate" references to UM coverage.
In Roger v. Estate of Moulton, 513 So.2d 1126, 1130 (La.1987), the Supreme Court stated:
In Louisiana, UM coverage is provided for by statute and embodies a strong public policy. The object of the statute is to promote recovery of damages for innocent automobile accident victims by making UM coverage available for their benefit as primary protection when the tortfeasor is without insurance, and as additional or excess coverage when he is inadequately insured.
To carry out this objective of providing reparation for those injured through no fault of their own, this Court has held the statute is to be liberally construed. Thus, the requirement that there be UM coverage is an implied amendment of any automobile liability policy, even one which does not expressly address the subject matter, as UM coverage will be read into the policy unless validly rejected.
UM coverage is determined not only by contractual provisions, but also by applicable statutes. In the absence of a specific rule, general insurance law governs. The liberal construction given the UM statute requires the statutory exceptions to the coverage requirement be interpreted strictly. Any exclusion from coverage in an insurance policy must be clear and unmistakable. In accordance with this strict construction requirement, the intermediate courts have held the insurer bears the burden of proving any insured named in the policy rejected in writing the coverage equal to bodily injury coverage or selected lower limits.

*253 (citations omitted)
Furthermore, the expression of a desire not to have UM coverage, however clear, does not necessarily constitute a valid rejection if the expression of rejection does not meet the formal requirements of law. Cohn v. State Farm Mut. Auto. Ins. Co., 03-2820 (La.App. 1 Cir. 2/11/05), 895 So.2d 600, 602, writ denied, 05-1000 (La.6/17/05), 904 So.2d 705, citing Roger v. Estate of Moulton, 513 So.2d 1126, 1131 (La.1987).
During the effective dates of the policy and at the time of the accident, La. R.S. 22:1406(D)[1] governed UM coverage and provided, in pertinent part:
The following provisions shall govern the issuance of uninsured motorist coverage in this state:
(1)(a)(i) No automobile liability insurance covering liability arising out of the ownership, maintenance, or use of any motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle designed for use on public highways and required to be registered in this state or as provided in this Subsection unless coverage is provided therein or supplemental thereto, in not less than the limits of bodily injury liability provided by the policy, under provisions filed with and approved by the commissioner of insurance, for the protection of persons insured thereunder who are legally entitled to recover nonpunitive damages from owners or operators of uninsured or underinsured motor vehicles because of bodily injury, sickness, or disease, including death resulting therefrom; however, the coverage required under this Subsection is not applicable when any insured named in the policy . . . rejects coverage . . . in the manner provided in Item D(1)(a)(ii) of this Subsection . . .
(ii) . . . such rejection . . . shall be made only on a form prescribed by the commissioner of insurance. The prescribed form shall be provided by the insurer and signed by the named insured or his legal representative. The form signed by the named insured or his legal representative which initially rejects such coverage . . . shall be conclusively presumed to become a part of the policy or contract when issued and delivered, irrespective of whether physically attached thereto. A properly completed and signed form creates a rebuttable presumption that the insured knowingly rejected coverage . . .
(emphasis added)
Plaintiffs assert that the March 22, 2002 UM form cannot be considered a valid rejection of coverage because it does not meet the formal requirements of La. R.S. 22:680 and Louisiana Insurance Rating Commission (LIRC) Bulletin 98-01[2]. They argue that the UM form cannot be considered a valid waiver of coverage solely because it does not name the insured or the correct policy number.
La. R.S. 22:680(1)(a)(ii) provides that the UM form "shall be ... signed by the named insured or his legal representative." Plaintiffs argue the UM form in this case fails to meet this requirement because it was solely signed by Logan, with no reference to the "actual insured," Intertrust.
Louisiana law does not require that a corporation issue a corporate resolution *254 in order for a corporate representative to validly execute a rejection form. Dabney v. Plaisance, 02-0710 (La.App. 4 Cir. 12/4/02), 832 So.2d 1103, 1109, writ denied, 03-0376 (La.4/21/03), 841 So.2d 804. The record is uncontroverted that Logan was Managing Member and President of Intertrust. Included in the record is an affidavit by Logan stating that he was a properly authorized legal representative of Intertrust when he rejected UM coverage as part of the policy. Further, La. R.S. 22:680(1)(a)(i) provides that the UM coverage "required under this Section is not applicable when any insured named in the policy" rejects the coverage. Logan is listed in the policy's "Schedule of Named Insureds." Therefore, we find this argument without merit.
The UM form prescribed by the commissioner of insurance provides a line for the "Policy Number" in the lower right-hand corner of the form. Plaintiffs assert that the policy number referenced on Intertrust's UM form (Policy No. 1336555908) "relates to an older `lapsed' policy of insurance" rather than the relevant policy number (Policy Number XXXXXXXXXX). In fact, as of 12:01 a.m. on March 22, 2002, Policy Number XXXXXXXXXX, Renewal of Number XXXXXXXXXX, went into effect for policy period 3-22-02 to 3-22-03. Because the UM form was executed on the day that the policy renewed, March 22, 2002, it is clear that Intertrust was waiving UM coverage for the renewal policy number XXXXXXXXXX. Accordingly, we find this argument without merit.
Plaintiffs next point out that the policy also contains a blank/unsigned UM form with the correct policy number typed in. They assert that the mere existence of these two UM forms create enough ambiguity and deviation from the formal requirements of La. R.S. 22:680 and LIRC 98-01 to invalidate the improperly executed form. However, the unsigned form referenced by plaintiffs is not relevant because, unlike the signed one, it is not the required form prescribed by the commissioner of insurance. Accordingly, we find this argument without merit.
Finally, plaintiffs argue that further ambiguity is created by references to UM coverage in the insurance quote and numerous "non-boilerplate" references to UM coverage in the policy. The law requires that a liability policy issued in Louisiana must contain UM benefits in the amount "not less than the limits of bodily injury liability provided by the policy" unless the insured validly rejects UM coverage or selects lower limits. La. R.S. 22:680(1)(a)(i). The form signed by the insured or his legal representative which initially rejects coverage, selects lower limits, or selects economic-only coverage shall remain valid for the life of the policy and shall not require the completion of a new selection form when a renewal policy is issued. La. R.S. 22:680(1)(a)(ii). However, an insured may change the original uninsured motorist selection or rejection on a policy at any time during the life of the policy by submitting a new uninsured motorist selection form to the insurer on the form prescribed by the commissioner of insurance. La. R.S. 22:680(1)(a)(ii). Though there are references to UM coverage in the insurance quote and the policy, the insured, Intertrust, chose to reject this coverage on March 22, 2002, on the form prescribed by the commissioner of insurance. Therefore, we find this argument without merit.
For the foregoing reasons, the judgment of the trial court is affirmed.
AFFIRMED.
NOTES
[1] La. R.S. 22:1406(D) was redesignated as 22:680 by Acts 2003, No. 456, § 3.
[2] Pursuant to La. R.S. 22:1406(D)(1)(a)(ii), LIRC Bulletin 98-01 promulgated the prescribed form and provided, "[f]or identification purposes, the company name must be placed at the lower left-hand corner and the policy number at the lower right-hand corner of the Form."