986 So.2d 110 (2008)
Ronald JOHNSON
v.
Royley FOLSE, Jr. and Progressive Security Insurance Company
Sissy Ann St. Pierre
v.
Royley A. Folse, Jr., His Liability Insurance Carrier, Progressive Casualty Insurance Company, Ronald L. Johnson, Jessie Dupuy, Ramos Corporation, And Their Liability Insurance Carrier, Progressive Security Insurance Company
Steve Reynoso, Fred Mollett, Michael Bogan, and Jessie Dupuy
v.
Progressive Casualty Insurance Company, Progressive Security Insurance Company and Royley A. Folse, Jr.
Nos. 07-CA-1031 and 07-CA-1032 & 07-CA-1033.
Court of Appeal of Louisiana, Fifth Circuit.
May 27, 2008.
*112 W. Paul Wilkins, Attorney at Law, Baton Rouge, LA, For Plaintiff/Appellee.
Charles V. Giordano, Tasha W. Hebert, Hebbler & Giordano, LLC, Metairie, LA, for Defendant/Appellant.
Panel composed of Judges THOMAS F. DALEY, SUSAN M. CHEHARDY, and FREDERICKA HOMBERG WICKER.
THOMAS F. DALEY, Judge.
This appeal concerns the validity of a UM waiver. Progressive Security Insurance Company appeals the trial court's denial of its Motion for Summary Judgment and the grant of appellee, Ronald Johnson's, Cross-Motion for Summary Judgment, which found that the UM waiver failed to comply with applicable law, thus affording UM coverage for the accident at issue. For the reasons that follow, we affirm the trial court's judgment.
This litigation arises out of an automobile accident that occurred on November 13, 2006.[1] Appellee, Ronald Johnson, was driving a van owned by his employer, Ramos Corporation, in which he was transporting his co-employees, Steve Reynoso, Fred Mollett, Michael Bogan, and Jessie Dupuy, back to their quarters. As the van traveled west on Highway 20 in Lafourche Parish, defendant, Royley Folse, Jr., who was traveling east, crossed the center line of Highway 20 and collided head-on with the van.
Defendant Progressive Security Insurance Company (Progressive Security) agreed that at the time of the accident it supplied an automobile liability insurance policy in favor of "Raymond Johnson, Inc.," which covered drivers of vehicles owned by Ramos Corporation. Specifically, Progressive Security issued liability policy #XXXXXXXX-X to Raymond Johnson, Inc. on November 7, 2003, but contended that Raymond Johnson declined uninsured/underinsured motorist bodily injury coverage *113 (UM) for all those insured under the policy.
Progressive Security filed a Motion for Summary Judgment seeking a declaration that its policy did not provide UM coverage for any insureds of Raymond Johnson, Inc. Progressive Security argued that the UM coverage waiver form signed by Raymond Johnson waived coverage. Specifically, Progressive argued that Raymond Johnson properly completed the waiver form because he initialed the rejection, signed his name on the UM rejection with the policy number and the name of the insured printed on both pages of the UM rejection form, and dated the UM form. Further, Progressive Security argued that Raymond Johnson was clearly signing in his representative capacity for Raymond Johnson, Inc., the insured.
Appellee, Ronald Johnson, (who is no relation to Raymond Johnson) filed a Cross-Motion for Summary Judgment seeking a declaration that Progressive Security's policy provided UM coverage for Ronald Johnson. Appellee maintained that the UM waiver form was ineffective because it was not properly completed in accordance with LSA-R.S. 22:680, in that Raymond Johnson signed the waiver form, individually, and without any statement as to his representative capacity in relation to the corporate insured. He also alleged that Raymond Johnson failed to print his name or the policy number in the blanks provided on the form.
The trial court granted Appellee's Motion for Partial Summary Judgment and denied Progressive Security's Motion for Summary Judgment in a judgment rendered on September 7, 2007. In his Reasons for Judgment, the court stated:
The Court finds that the U/M rejection form at issue in this case is invalid for failure to comply with the requirements of R.S. 22:680 and the Supreme Court's opinion in Duncan v. U.S.A.A. Insurance Co.,[2] due to the fact that Raymond Johnson did not print his name in the blank provided, the policy number was not written in the blank provided, and Raymond Johnson did not indicate whether he was executing the document individually or in his representative capacity for Raymond Johnson, Inc.
Progressive Security first filed a Motion to Certify the Judgment as Final and Appealable on September 21, 2007, which was set for hearing on November 12, 2007. In the meantime, in an abundance of caution, Progressive filed an Application for Supervisory Writs with this Court on October 4, 2007 (07-C-797), seeking review of the denial of its Motion for Summary Judgment on September 7, 2007. On November 12, 2007, the trial court certified the judgment as final. On November 15, 2007, Progressive Security filed a Motion for Devolutive Appeal, which was granted. On November 28, 2007, this Court denied Progressive Security's Writ Application with lengthy reasons.
On appeal, Progressive Security argues that the trial court erred in denying its Motion for Summary Judgment and granting appellee's Cross-Motion for Partial Summary Judgment. Specifically, Progressive Security argues that the UM rejection at issue was compliant with LSA-R.S. 22:680 and Duncan because 1) he initialed his rejection of coverage in the correct blank on the proper form; 2) he signed his name on the proper rejection form; 3) the form contained the printed name of the insured; 4) the form contained the entire policy number on each page; and 5) the policy holder dated the rejection *114 form with the effective date of the rejection.
Johnson, on the other hand, argues in brief that the summary judgment granted in his favor was proper because the UM rejection form did not comply with the requirements of Duncan in three respects: 1) there was no printed name of the named insured in the space provided; 2) the person who signed the form did not identify his representative capacity on behalf of the corporate named insured; and 3) the policy number was not printed in the space prescribed by the Commissioner.

Summary Judgment
A motion for summary judgment is a procedural device used when there is no genuine issue of material fact. The summary judgment procedure is favored and designed to secure the just, speedy, and inexpensive determination of every action and shall be construed to accomplish these ends. La. C.C.P. art. 966(A)(2). Appellate courts review summary judgments de novo under the same criteria that govern the district court's consideration of whether summary judgment is appropriate. Schroeder v. Board of Supervisors of Louisiana State Univ., 591 So.2d 342, 345 (La.1991). A motion for summary judgment is properly granted only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue of material fact, and the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966.

Duncan v. U.S.A.A. Ins. Co., 2006-363 (La.11/29/06), 950 So.2d 544, 547.
Additionally, a "fact" is "material" if its existence or nonexistence may be essential to a party's cause of action under the applicable theory of recovery. Penalber v. Blount, 550 So.2d 577, 583 (La.1989). Or, put another way, any decision as to the propriety of a grant of the motion must be made with reference to the substantive law applicable to the case. Only in the context of the applicable substantive law can issues of material fact be ascertained. Johnson v. Drury, 99-608, 99-1071, at pp. 5-6 (La. App. 5 Cir. 6/2/00), 763 So.2d 103, 107-8; Sun Belt Constructors, a Div. of MCC Constructors, Inc. v. T & R Dragline Service, Inc., 527 So.2d 350, 352 (La.App. 5 Cir.1988).
Though neither party invokes the doctrine of law of the case, this case's procedural scenario is fitting to invoke it. This Court denied Progressive Security's writ on November 28, 2007, in a three page ruling that clearly considered the merits of the issue and applicable case law (Duncan). Not only is the issue in this appeal identical to the issue considered by the writ panel, the writ and the appeal were taken on the very same judgment, and the parties are the same (relator and appellant are the same party, Progressive). No intervening rulings have occurred. No change in the applicable law has occurred.
It is true that generally, when an appellate court considers arguments made in supervisory writ applications, the court's disposition on the issue considered becomes the "law of the case," foreclosing re-litigation of that issue either at the district court on remand or in the appellate court on a later appeal. However, the denial of a writ application creates a different situation. A denial of supervisory review is merely a decision not to exercise the extraordinary powers of supervisory jurisdiction, and does not bar reconsideration of, or a different conclusion on, the same question when an appeal is taken from a final judgment. Cotton v. Gaylord Container, 96-1958, 96-2029, and 96-2049 (La.App. 1st Cir.3/27/97), 691 So.2d 760, 763, writ denied, 97-0800 (La.4/8/97), 693 So.2d 147. *115 In the consolidated cases we are considering, this court denied the writ, thereby declining to exercise its supervisory jurisdiction. See Jones, 05-1200, supra. Therefore, reconsideration of those issues is appropriate at this time.
Jones v. Livingston Parish Law Enforcement Dist, 07-0628 (La.App. 1 Cir. 9/14/07), 970 So.2d 996. In the instant case, however, the writ panel clearly considered the merits of the issue and did not decline to exercise supervisory jurisdiction.
Progressive Security has had its day in court on this identical issue, reviewing the identical judgment, in Writ Application 07-C-797. They received a thoughtful consideration of the issue, as evidenced by the lengthy disposition. There are no new issues on appeal.
In this matter, Duncan is the most recent statement by the Supreme Court on the requirements that a UM waiver must fulfill to comply with the law. Uninsured/underinsured motorists' insurance coverage in Louisiana is governed by the provisions of La. R.S. 22:680, which provides, in pertinent part, as follows:
(1)(a)(i) No automobile liability insurance covering liability arising out of the ownership, maintenance, or use of any motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle designed for use on public highways and required to be registered in this state or as provided in this Section unless coverage is provided therein or supplemental thereto, in not less than the limits of bodily injury liability provided by the policy, under provisions filed with and approved by the commissioner of insurance, for the protection of persons insured thereunder who are legally entitled to recover nonpunitive damages from owners or operators of uninsured or underinsured motor vehicles because of bodily injury, sickness, or disease, including death resulting therefrom; however, the coverage required under this Section is not applicable when any insured named in the policy either rejects coverage, selects lower limits, or selects economic-only coverage, in the manner provided in Item (1)(a)(ii) of this Section....
(ii) Such rejection, selection of lower limits, or selection of economic-only coverage shall be made only on a form prescribed by the commissioner of insurance. The prescribed form shall be provided by the insurer and signed by the named insured or his legal representative. The form signed by the named insured or his legal representative which initially rejects such coverage, selects lower limits, or selects economic-only coverage shall be conclusively presumed to become a part of the policy or contract when issued and delivered, irrespective of whether physically attached thereto. A properly completed and signed form creates a rebuttable presumption that the insured knowingly rejected coverage, selected a lower limit, or selected economic-only coverage. The form signed by the insured or his legal representative which initially rejects coverage, selects lower limits, or selects economic-only coverage shall remain valid for the life of the policy and shall not require the completion of a new selection form when a renewal, reinstatement, substitute, or amended policy is issued to the same named insured by the same insurer or any of its affiliates....
The Louisiana Supreme Court addressed the validity of a UM selection form in Duncan, reiterating that Louisiana statutory law provides for UM coverage for the purpose of providing "full recovery for automobile accident victims who suffer damages caused by a tortfeasor who is not *116 covered by adequate liability insurance." Id., 06-0363 at p. 4, 950 So.2d at 547. The existence and extent of UM coverage is determined not only by contractual provisions, but also by the applicable statute, currently La. R.S. 22:680. Roger v. Estate of Moulton, 513 So.2d 1126, 1130 (La. 1987). UM coverage will, therefore, be read into any automobile liability policy "unless validly rejected." Daigle v. Authement, 96-1662, p. 3 (La.4/8/97), 691 So.2d 1213, 1214; Henson v. Safeco Ins. Co., 585 So.2d 534, 537 (La.1991).
Further, statutes providing for UM coverage in the absence of a valid rejection or selection of lower limits must be liberally construed, while the statutory exceptions to UM coverage must be strictly construed. Roger, 513 So.2d at 1130. Any exclusion from coverage must be clear and unmistakable. Id. Thus, "the insurer bears the burden of proving any insured named in the policy rejected in writing the coverage equal to bodily injury coverage or selected lower limits." Tugwell v. State Farm Ins. Co., 609 So.2d 195, 197 (La. 1992).
In this case, Progressive Security filed a Motion for Summary Judgment on the issue of coverage, to which it attached a copy of the UM selection form in question. Appellee filed a Cross-Motion for Partial Summary Judgment, to which it attached a copy of the original Petition for Damages and a copy of the UM selection form. Ultimately, because there are cross-motions for summary judgment, the determination of whether either the appellee or Progressive Security are entitled to summary judgment in this case depends on whether Progressive Security carried its burden of producing factual support sufficient to establish that it would be able to satisfy its evidentiary burden of proof at trial  i.e., by producing a valid UM rejection form from the policy holder.
The UM selection form that Progressive Security relies upon is the form promulgated for that purpose by the Louisiana Commissioner of Insurance. In Duncan, this Court noted as follows:
The commissioner of insurance, in drafting the form, requires six tasks, all of which we find to be pertinent in rejecting UM coverage. The insured initials the selection or rejection chosen to indicate that the decision was made by the insured. If lower limits are selected, then the lower limits are entered on the form to denote the exact limits. The insured or the legal representative signs the form evidencing the intent to waive UM coverage and includes his or her printed name to identify the signature. Moreover, the insured dates the form to determine the effective date of the UM waiver. Likewise, the form includes the policy number to demonstrate [to] which policy it refers....
06-0363 at [p.] 13, 950 So.2d at 552. In Duncan, the Supreme Court found that a form that omitted the policy number was invalid. Id.
In this case, Progressive Security claims that all six of the tasks required by the Insurance Commissioner's form were completed, thereby making the form valid under Duncan. On the other hand, appellee argues that the UM selection form is not in compliance with Louisiana law because the policy holder signed, but did not print his name, the policy holder did not write the policy number in the prescribed blank, and the policy holder did not state if he was signing in his individual or representative capacity.
In this case, the named insured is "Raymond Johnson, Inc." Both parties attached as an exhibit to their Motions the form, which was entitled `State of Louisiana Uninsured/Underinsured Motorist Bodily *117 Injury Coverage Form.' It was signed and dated by "Raymond Johnson." Further, the initials "RJ" are in the blank next to the statement, "I do not want UMBI Coverage. I understand that I will not be compensated through UMBI Coverage for losses arising from an accident caused by an uninsured/underinsured motorist."
Progressive Security avers that it issued only one policy to Raymond Johnson, Inc. with the number of said policy clearly printed at the top of both pages of the UM coverage selection form. Appellee avers that Raymond Johnson did not clearly reject UM coverage because he did not indicate in which capacity he signed the rejection form.
The trial court relied on the Duncan case. The Duncan court stated that "the issue before us today is whether the UM statute requires that the blank for the policy number contained on the insurance commissioner's form be filled in to effectuate a valid waiver of UM coverage." In answering this question, the court interpreted the UM statute as amended in 1997, in particular this language:
[S]uch rejection, selection of lower limits, or selection of economic-only coverage shall be made only on a form prescribed by the commissioner of insurance. The prescribed form shall be provided by the insurer and signed by the named insured or his legal representative. The form signed by the named insured or his legal representative which initially rejects such coverage, selects lower limits, or selects economic-only coverage shall be conclusively presumed to become a part of the policy or contract when issued and delivered, irrespective of whether physically attached thereto. A properly completed and signed form creates a rebuttable presumption that the insured knowingly rejected coverage, selected a lower limit, or selected economic-only coverage.
1997 La. Acts No. 1476.
The Duncan court found that the prescribed form involved six tasks, notwithstanding that the statute required fewer:
Western Heritage contends that the only requirements for a valid rejection of UM coverage are those explicitly imposed by the statute. Thus, the form is properly completed if parties comply with the statutory requirements. Specifically, the statute requires only: (1) that the rejection or selection be made on a form prescribed by the commissioner of insurance; (2) that the form be provided by the insurer; and (3) that the form be signed by the named insured or his legal representative. Western Heritage argues that it has complied with all of these requirements and that the absence of a policy number should not be fatal to the waiver of UM coverage.
Essentially, the prescribed form involves six tasks: (1) initialing the selection or rejection of coverage chosen; (2) if limits lower than the policy limits are chosen (available in options 2 and 4), then filling in the amount of coverage selected for each person and each accident; (3) printing the name of the named insured or legal representative; (4) signing the name of the named insured or legal representative; (5) filling in the policy number; and (6) filling in the date.
The argument that the statute only requires those components explicitly mentioned in the statute implies some of the blanks on the form are optional, precatory, or at least not necessary for a valid UM waiver. For instance, the statute does not state that the rejection or selection must be initialed. Under this argument, the rejection or selection of coverage would need not be initialed *118 and a checkmark would be sufficient. But see Dyess v. American Nat'l Prop. & Cas. Co., 03-1971, pp. 7-9 (La.App. 1 Cir. 6/25/04), 886 So.2d 448, 453. Likewise, the statute refers to a "rejection, selection of lower limits, or selection of economic-only coverage" but does not address the insured filling in the exact amount of coverage desired. Arguably, the insured could select the option of lower limits under the mandate of the statute without filling in the blanks stating the exact limits for each person and each accident. Moreover, the statute does not require that the named insured or legal representative print his or her name, date the document, or include the policy number. If the only mandatory elements of the form are those outlined by the statute, then UM coverage would effectively be waived as long as one of the coverage options was checked and the form was signed.
If the statute requires only these bare essentials, then it seems unnecessary for it to direct the commissioner of insurance to prescribe a form. The legislature could have simply prescribed the form itself within the statute. See, e.g., La. R.S. 40:1299.58.3. In directing the commissioner of insurance to prescribe a form, the legislature gave the commissioner the authority to determine what the form would require.
The court disagreed that if the form is not properly completed, the result was merely that the presumption does not apply and therefore the insurer must prove the insured knowingly waived coverage.
The court held that "the expression of a desire not to have UM coverage, however clear, does not necessarily constitute a valid rejection if the expression of rejection does not meet the formal requirements of the law," because when the legislature gave the Commissioner the authority to create the prescribed form, pursuant to that mandate, compliance with the form prescribed by the Commissioner is necessary. The insurer cannot rely on the insured's intent to waive UM coverage to cure a defect in the form of the waiver. In Duncan, by failing to include the policy number in the blank provided on the form, the insurer failed to effectuate a valid rejection of UM coverage.
Justice Weimer wrote a thoughtful dissent, disagreeing with the majority's conclusion that essentially negated the "rebuttable presumption" language in LSA-R.S. 22:680. But the majority opinion held differently, and is the interpretation of the statute that lower courts, including this one, are bound to follow.
In this case, the trial court, following Duncan, found the rejection invalid, because the policy number line was left blank (even though it was pre-printed on the form),[3] and because the line for the insured to print the name was left blank (even though, like the policy number, the insured's name Raymond Johnson, Inc, is pre-printed on the form), and further, when Raymond Johnson signed his name, he did not designate whether it was personally or in his representative capacity.
We agree with the writ panel's reasons for denying the Writ Application as follows:[4]
In this case Raymond Johnson signed his name without indicating he was signing *119 in his capacity as legal representative of the company. Furthermore, he left blank the printed name of the insured or legal representative in the space above the signature line. Thus, there is an ambiguity in the form because it is unknown whether Raymond Johnson is signing individually or as a legal representative of the company. Since the rejection in this regard is not clear and unmistakable, Progressive is not entitled to a rebuttable presumption that the insured knowingly rejected UM coverage.
And further:
... Duncan held that compliance with the form prescribed by the commissioner of insurance is necessary for the UM waiver to be valid. The insurer cannot rely on the insured's intent to waive UM coverage to cure a defect in the form of the waiver. 950 So.2d at 553. Although Carter might create an exception for the policy number under certain circumstances, Duncan still controls with regard to other missing information.
Because of Duncan's holding, Progressive is not entitled to a remand in order to produce evidence regarding Raymond Johnson's intent. The failure to comply with the requirements for confecting a valid UM selection form is not subject to reformation. Gray v. American Nat. Property & Cas. Co., XXXX-XXXX (La.2/26/08), 977 So.2d 839. Because the signatory's capacity is ambiguous on the face of the form, Duncan holds that the waiver is deficient and UM coverage is afforded under the policy. Accordingly, the judgment of the trial court is affirmed.
AFFIRMED.
CHEHARDY, J., dissents with reasons.
I must dissent from the majority's opinion. I believe that the majority errs in its result as well as its reasoning. Primarily, I believe that this matter is not ripe for summary judgment because there exists a genuine issue of material fact as to the identity of the policyholder or the named insureds covered under the liability policy. The record before us does not contain a copy of the liability policy at issue in this matter. Since the record is devoid of evidence of the policyholder and named insureds, I find it difficult to conclude that the policyholder or named insureds either performed or failed to perform any function. On that basis alone, I would reverse the grant of summary judgment in either party's favor.
Nevertheless, even if I were able to make a determination based on the record before us, I would still disagree with the majority opinion. The majority makes a finding that "this case's[sic] procedural scenario is fitting to invoke" the "law of the case." In Petition of Sewerage and Water Bd. of New Orleans,[1] the Louisiana Supreme Court discussed the "law of the case":
The "law of the case" principle relates to (a) the binding force of trial court rulings during later stages of the trial, (b) the conclusive effects of appellate rulings at the trial on remand, and (c) the rule that an appellate court will ordinarily not reconsider its own rulings of law on a subsequent appeal in the same case. Among reasons assigned for application of the policy are: the avoidance of indefinite relitigation of the same issue; *120 the desirability of consistency of the result in the same litigation; and the efficiency, and the essential fairness to both sides, of affording a single opportunity for the argument and decision of the matter at issue.
Here, the ruling that the majority alludes to as "law of the case" is this Court's denial of the insurer's application for supervisory review of the same ruling at issue in this appeal. In its opinion, the majority cites to and relies heavily upon the language of the unpublished writ disposition.[2] While I agree that an appellate court's disposition that grants a writ on a considered issue usually becomes the "law of the case,"[3] believe that the denial of a writ application creates a different situation.[4] The denial of an application for supervisory review, which occurred in this case, is merely a decision not to exercise the "extraordinary powers of supervisory jurisdiction," which does not bar reconsideration of the same question when an appeal is taken from a final judgment.[5]
Further, the principle of "law of the case" is discretionary and is not applied in cases of palpable error or where manifest injustice would occur if the principle was applied.[6] In this matter, the "law of the case" is clearly not applicable because there was palpable error in the ruling made on the insurer's writ application.[7] Specifically, the writ panel expanded the holding of Duncan "with regard to other missing information" on a waiver of coverage form. Duncan, however, held only that "the failure to fill in the policy number on the form prescribed by the commissioner of insurance invalidates the UM waiver."[8] The Duncan court did not state that the waiver was invalid if the signatory failed to declare his capacity when he signed the waiver; rather, the supreme court repeatedly notes that the waiver form was to be signed by "the insured or the legal representative," which directly quotes the statutory language.[9] The earlier writ denial by this Court should not be relied upon as "law of the case" since it was clearly in error.
Finally, upon the issuance of this opinion, the majority will have maintained that expansion of Duncan, at least in this circuit, requiring that the signatory declare his capacity in order for the waiver of coverage to be "clear and unmistakable." While I agree that the Duncan court held that "compliance with the form prescribed by the commissioner of insurance is necessary for the UM waiver to be valid,"[10] I do not find the either the statute or the jurisprudence require the signatory to declare his capacity to validate the rejection of coverage. Clearly, my reading of Duncan[11] *121 differs substantially from that of the majority. As such, I must dissent from the majority's opinion in this case.

APPENDIX

WRIT DENIED
The question presented here concerns the validity of an uninsured/underinsured (UM) rejection form. Relator Progressive Security Insurance Co. (Progressive) seeks supervisory review of the September 7, 2007 judgment denying defendant Progressive's motion for summary judgment on the issue of insurance coverage, and granting plaintiff Ronald Johnson's motion for partial summary judgment. The trial judge found that there was no valid rejection of UM coverage. Our de novo review discloses no error of trial court's ruling.
The form contains the following: (1) the typed name "Raymond Johnson, Inc. and the policy number at the top of each page; (2) the initials "RJ" by the line indicating rejection of UM coverage; (3) "Raymond Johnson's" signature at the end of the form; (4) the blank for the named insured or legal representative above the signature line is not filled in; and, (5) the blank for the policy number on the right of the signature line is not filled in.
The trial judge found that the waiver form was ineffective because it was not properly completed. Although Raymond Johnson signed the form, he did not print the name of the insured or legal representative. He did not indicate he was signing in a representative capacity for the company and he did not write the policy number in the blank that was provided.
Summary judgment is a procedural device that is used when there is no genuine issue of material fact. Duncan v. U.S.A.A. Insurance Co., 06-363 (La.11/29/06), 950 So.2d 544, 546; La.C.C.P. art. 966. Appellate courts review summary judgments de novo under the same criteria used by the district court. Schroeder v. Board of Sup'rs of Louisiana State University, 591 So.2d 342, 345 (La.1991). A motion for summary judgment is properly granted only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue of material fact, and the mover is entitled to a judgment as a matter of law. Article 966(B). The UM statute, La.R.S. 22:680, requires that the statutory exceptions to coverage be interpreted strictly. Duncan, 950 So.2d at 547 (citation omitted). An exclusion of coverage must be clear and unmistakable. The insurer has the burden of proving UM rejection. A properly completed and signed form is presumed to constitute a knowing waiver of UM coverage. This is because a properly completed form clearly evidences the intent of the insured to waive coverage. Duncan held by failing to include a policy number in the blank provided on the form, the insurer failed to effectuate a valid rejection of UM coverage. Duncan, 950 So.2d at 547, 552, 553.
After the trial judge ruled, the Louisiana Supreme Court granted writs in Carter v. State Farm Mutual Automobile Insurance Company, et al., 07-1294 (La.10/5/07), 964 So.2d 375. The court noted in part that the case was factually distinguishable from Duncan because the commissioner's regulations allow omission of the policy number if it does exist at the time the UM waiver form is completed. However, Carter, did not expressly overrule Duncan. Furthermore, Carter did not explain how that case was factually distinguishable from Duncan. We need *122 not determine whether the present case is also factually distinguishable from Duncan so that the policy number need not be filled in when, as in this case, the policy number is contained at the top of both pages of the document.
Here, even assuming Carter applies with regard to the missing policy number in the blank provided, we find that the trial judge did not otherwise err in concluding there was no effective rejection of UM coverage.
In this case Raymond Johnson signed his name without indicating he was signing in his capacity as legal representative of the company. Furthermore, he left blank the printed name of the insured or legal representative in the space above the signature line. Thus, there is an ambiguity in the form because it is unknown whether Raymond Johnson is signing individually or as a legal representative of the company. Since the rejection in this regard is not clear and unmistakable, Progressive is not entitled to a rebuttable presumption that the insured knowingly rejected UM coverage.
We find Progressive's reliance on this Court's opinion in Lee v. Naquin, 05-606 (La.App. 5 Cir. 2/3/06), 924 So.2d 250, 253-254, misplaced. Naquin predated Duncan. There, we held that a rejection form signed by the employer's president was valid without reference to the named insured. In that case the form was signed by the individual without reference to the actual named company. But it was uncontroverted that the individual was a managing member and president of the company. Furthermore, the named individual was listed in the policy schedule of named insureds. Thus, Lee is distinguishable from the present case since there is no indication Raymond Johnson was a managing member and president of the company.
More importantly, Duncan held that compliance with the form prescribed by the commissioner of insurance is necessary for the UM waiver to be valid. The insurer cannot rely on the insured's intent to waive UM coverage to cure a defect in the form of the waiver. 950 So.2d at 553. Although Carter might create an exception for the policy number under certain circumstances, Duncan still controls with regard to other missing information.
Accordingly, for the reasons stated, the writ is denied.
NOTES
[1] This litigation consists of three suits that were consolidated at trial.
[2] 2006-363 (La. 11/29/06), 950 So.2d 544.
[3] This Court, in the Writ Application, found that the blank line for the policy number was not a fatal defect, because the policy number was pre-printed on the form, citing Carter v. State Farm Mutual Automobile Insurance Co. et al., 07-1294 (La. 10/5/97), 964 So.2d 375. We see no error in this conclusion.
[4] The writ disposition is attached as an Appendix to this opinion.
[1] 278 So.2d 81, 83 (La.1973)(citing Day v. Campbell-Grosjean Roofing & S.M. Corp., 260 La. 325, 256 So.2d 105 (1971); Louisiana State Bar Assn. v. Theard, 225 La. 98, 72 So.2d 310 (1954); City of Gretna v. Aetna Life Ins. Co., 207 La. 1085, 22 So.2d 658 (1945); Wall v. American Employers Ins. Co., 250 So.2d 172 (La.App. 1st Cir.1971); Keller v. Thompson, 134 So.2d 395 (La.App. 3d Cir. 1961)(full discussion). (Citations omitted).
[2] See Appendix.
[3] Easton v. Chevron Indus., Inc., 602 So.2d 1032 (La.App. 4 Cir.), writs denied, 604 So.2d 1315 (La.1992).
[4] Dupre v. Maynard, 96-1183 (La.App. 1 Cir. 3/27/97), 692 So.2d 36, 38.
[5] Sattar v. Aetna Life Ins. Co., 95-1108 (La. App. 4 Cir. 3/20/96), 671 So.2d 550.
[6] Washington v. Aetna Life Ins. Co., 03-0790 (La.App. 4 Cir. 7/02/03), 853 So.2d 34, 37.
[7] I believe that it was also error to address the merits of the parties' arguments yet deny the application for writ of supervisory review. Dupre, 692 So.2d at 38.
[8] Duncan v. U.S.A.A., Inc. Co., 06-363 (La. 11/29/06), 950 So.2d 544. Further, Duncan has since been limited to policies where a policy number is available at the time the waiver form is completed. See Carter v. State Farm, 07-1294 (La.10/5/07), 964 So.2d 375.
[9] Id., 950 So.2d at 553-554.
[10] Id., 950 So.2d at 553.
[11] Id.