ROLAND L. BELSOME, Judge.
11 This appeal is taken from the trial court’s ruling granting summary judgment in favor of defendant, Liberty Mutual Insurance Company. For the reasons that follow, we affirm.
This lawsuit arises out of an April 12, 2013, automobile accident. The plaintiff, Paul Vitellaro, was rear-ended while driving a vehicle owned by his employer, Bayou Food Distributors (“Bayou”). Mr. Vi-tellaro filed suit against the driver of the vehicle that struck him, the driver’s insurer, and Liberty Mutual as the provider of uninsured/underinsured motorist (“UM”) coverage for Bayou.
Subsequently, Liberty Mutual filed a motion for summary judgment on the grounds that Bayou had rejected UM coverage in 2011 at the inception of its commercial liability policy. To support its motion for summary judgment, Liberty Mutual presented an affidavit from its Senior Commercial Lines Underwriter, Donna Hacholski; an affidavit from Bayou’s general manager, Art Mitchell; and *1261 the UM coverage selection form executed on April 27, 2011.
Ms. Hacholski attested to the existence of a commercial liability policy issued to Bayou by The Netherlands Insurance Company, an affiliate of Liberty | ¿Mutual. She further stated that the effective date of the policy was April 26, 2011; and the UM rejection form was executed on April 27, 2011. Further, she confirmed that the policy was renewed on April 26, 2012, through April 26, 2013, without any changes to the policy’s liability limits.
Mr. Mitchell’s affidavit established that in April of 2011 he was the general manager and legal representative for Bayou. In that capacity, he executed a UM selection form on April 27, 2011, rejecting UM coverage. Attached to the affidavit was a copy of the signed UM selection form. Mr. Mitchell identified the form; and he recounted that he initialed, signed, and dated the form.
The plaintiff, in his opposition, maintained that genuine issues of material fact existed mainly because he had been presented with later dated UM selection forms that had not been signed. The trial court granted summary judgment in favor of Liberty Mutual and dismissed the plaintiffs claims against the insurer. This appeal followed.
On appeal, Mr. Vitellaro maintains that the trial court erred in granting Liberty Mutual’s motion for summary judgment because discrepancies exist that raise genuine issues of material fact as to the validity of the UM selection form.
Appellate courts review the granting of a motion for summary judgment de novo. According to La. C.C.P. art. 966, the granting of a motion for summary judgment is appropriate if “[ajfter an opportunity for adequate discovery ... the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law.” La.C.C.P. art. 966A(3). The burden to establish that there is no genuine issue of material fact is placed on the moving party. La. C.C.P. art, 966D(1). [^However, once “the movant makes a prima facie showing that the motion should be granted, the burden then shifts to the non-moving party to produce evidence demonstrating that a material factual issue remains; the failure to do so mandates granting of the motion.” Phillips v. City of New Orleans, 16-0374, p. 2 (La.App. 4 Cir. 6/1/16), 194 So.3d 1264, 2016 WL 3090815 (citing Surcouf v. Darling, 16-278, p. 12 (La.App. 4 Cir. 10/21/16), 177 So.3d 1085, 1093).
La. R.S. 22:1295(l)(a)(ii) provides, in part, that “[a] properly completed and signed form creates a rebuttable presumption that the insured knowingly rejected coverage, selected a lower limit, or selected economic-only coverage.” Because the UM coverage statute is to be liberally construed, the insurer bears the burden of proving any insured named in the policy rejected in writing the coverage equal to bodily injury coverage or selected lower limits. Duncan v. U.S.A.A. Ins. Co., 06-363, pp. 4-5 (La.11/29/06), 950 So.2d 544, 547. Thus, a determination of whether Liberty Mutual was entitled to summary judgment depends on whether it carried its burden of producing factual support sufficient to establish that it would be able to satisfy its evidentiary burden of proof at trial by producing a valid UM waiver executed by a legal representative of Bayou.
In Duncan, the Supreme Court examined the UM selection form prescribed by the Commissioner of Insurance and found that the proscribed form involves six tasks: (1) initialing the selection or rejection of *1262 coverage chosen; (2) if limits lower than the policy limits are chosen (available in options 2 and 4), then filling in the amount of coverage selected for each person and each accident; (3) printing the name of the named insured or legal representative; (4) signing the name-of the named insured or legal representative; (5) filling in the policy number; and (6) filling in the date. Duncan, 06-363 at pp. 11-12, 950 So.2d at 551.
|4A review of the executed form that is in the record indicates that the necessary tasks mandated by Duncan are properly completed. The record contains a form dated April 27, 2011, that was submitted at the inception of the policy rejecting UM coverage by initials, has a signature, a printed name, a date, a policy number, and an insurer’s name.
Mr. Vitellaro challenges the validity of the April 27, 2011 UM selection form for two reasons: 1) the signatory did not indicate the capacity in which he was signing; and 2) the form would not apply to the renewal of the policy.
For his contention that the form was invalid because the signatory’s capacity is unknown, Mr. Vitellaro relies on Johnson v. Folse, 07-1031-33, (La.App. 5 Cir. 5/27/08), 986 So.2d 110. In Johnson, an executed UM selection form was found to be invalid due to several defects. More specifically, the court, following Duncan, found the rejection invalid because the policy number line was left blank, the line for the insured to print the name was left blank; and further, when Raymond Johnson signed his name, he did not designate whether it was personally or in his representative capacity.
We find Johnson distinguishable from the present case. The UM selection form in Johnson had numerous deficiencies, one being that Raymond Johnson’s signature did not indicate whether he was signing personally or on behalf of his corporation. That was significant in Johnson because the named insured was the corporation, Raymond Johnson, Inc. Here, we do not have the possibility of that type of confusion. Art Mitchell was the General Manager and legal representative for Bayou. He signed and printed his name on the lines that indicate insured or legal representative. Johnson, 07-1031-33 at pp. 13-14, 986 So.2d at 118
|,Further, the Louisiana Supreme Court addressed the same issue in Harper v. Direct Gen. Ins. Co., 08-2874 (La.2/13/09), 2 So.3d 418. The Supreme Court in Harper revisited its opinion in Duncan and stated that “[a] review of our opinion in Duncan reveals that we used the disjunctive ‘or’ with regard to tasks # 3 and # 4: ‘(3) printing the name of the named insured or legal representative; (4) signing the name of the named insured or legal representative.’ ” (emphasis in original). Harper, 08-2874 at p. 3, 2 So.3d at 419-20. The court specifically found that tasks # 3 and #4 were two separate tasks that could be satisfied with either the name of the insured or the legal representative. Accordingly, the legal representative does not have to indicate specifically that he or she is signing on behalf of the named insured. Id. The Supreme Court in Harper further recognized that an unrefuted affidavit was sufficient to establish the identity of the legal representative authorized to reject UM coverage.
Mr. Vitellaro also argues that fleet insurance policies, like the one in this case, require new selection forms be executed for each renewal policy. He cites to Bullock v. Homestead Ins., Co., 29,536 (La.App. 2 Cir. 6/20/97), 697 So.2d 712, in support of this argument. The court in the Bullock opinion stated that for fleet automobile liability policies an insured is *1263 not required to execute a new rejection of UM coverage when vehicles are added. In fact, the court in Bullock noted that fleet policies are generally not required to do so because, by nature, the policy envisions frequent adding and subtracting of vehicles. Bullock, 29,586 at p. 5, 697 So.2d at 714.
Additionally, La. -R.S. 22:1295(l)(a)(ii) specifically addresses when a new |fiUM selection form must be completed. The statute currently reads in pertinent part, as follows:
Any changes to an existing policy, regardless of whether these changes create new coverage, except changes in the limits of liability, do not create a new policy and do not require the completion of new uninsured motorist selection forms
La. R.S. 22:1295(l)(a)(ii) (emphasis added).
Through the unrefuted affidavit of Ms. Hacholski, Liberty Mutual established that since the initial effective date of the policy in April of 2011, there has been no change in the limits of liability. Therefore, the April 27,2011 UM selection form remained valid for the renewal period in question.
For these reasons, we affirm the trial court’s judgment granting summary judgment in favor of Liberty Mutual Insurance Company.
AFFIRMED